**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **CUBICLE ENTERPRISES LLC, d/b/a TheCubicle,** | Civil Action No. |
| **Plaintiff,** | **JURY TRIAL DEMAND** |
| -against- | **COMPLAINT** |
| **RUBIK'S BRAND LIMITED,** | |
| **Defendant.** | |

Plaintiff, Cubicle Enterprises LLC, d/b/a TheCubicle, by its undersigned counsel, Barton LLP, as and for its Complaint against defendant, Rubik's Brand Limited, respectfully alleges, as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action for (i) a Declaratory Judgment that it has not violated and does not violate certain of defendant's trademark rights under federal law pursuant to 28 U.S.C. § 2201; (ii) cancellation of four of defendant's trademark registrations under 15 U.S.C. § 1119 on the grounds that those marks are utilitarian functional and have become generic; (iii) cancellation of three of defendant's trademark registrations under 15 U.S.C. § 1120 owing to defendant's fraudulent registration of those marks; and (iv) damages and treble damages because of defendant's Sherman Act antitrust violations pursuant to 15 U.S.C. §§ 1 & 2 and its contraventions of the Clayton Act pursuant to 15 U.S.C. § 15.

1

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this action pursuant to: (a) 15 U.S.C. § 1051 *et seq.* and 28 U.S.C. §§ 2201(a) and 2202, because plaintiff seeks a trademark-related Declaratory Judgment; (b) 28 U.S.C. § 1331, because this action raises federal questions concerning trademark and antitrust law; (c) 28 U.S.C. § 1338, because this action relates to trademarks; and (d) 15 U.S.C. § 15, because plaintiff alleges injury under federal antitrust laws.

3.      This Court has personal jurisdiction over defendant, because defendant regularly conducts business in the State of New York and has the requisite contacts with this forum.

4.      Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b) and (c), because defendant is subject to personal jurisdiction within this District, and a substantial part of the events giving rise to the claims propounded herein has occurred and will continue to occur in this District.

## PARTIES

5.      Plaintiff, Cubicle Enterprises LLC, d/b/a TheCubicle, ("Cubicle"), is a limited liability company organized and existing under the laws of the State of New York with its principal place of business at 8 Westchester Plaza, Elmsford, New York 10523.

6.      Upon information and belief, defendant, Rubik's Brand Limited ("Rubik's"), is a limited liability company organized and existing under the laws of the United Kingdom with its principal place of business at 7 Lambton Place, London, England W11 2SH.

## **PERTINENT FACTS**

I.     Cubicle and Its Business

7.     Cubicle is a leading online specialty store launched in August 2011 that sells various cube puzzle products and accessories. Cubicle operates in the State of New York and has served hundreds of thousands of puzzle fans, from beginners to world champions.

8.     Cubicle is widely recognized as a major innovator and top contributor in the "speedcubing" community. Speedcubing involves the extremely expeditious solving of twist puzzle cube products and is a popular worldwide pastime and competitive sport. Over the years, Cubicle has played a significant role in developing speedcubing industry standards and pioneered several revolutionary products and accessories. The Cubicle brand is regarded globally as one of the most famous brands in speedcubing.

9.     Cubicle sponsors and participates in speedcubing competitions worldwide and often sells its products at vending booths at such competitions.

10.     Cubicle's cube puzzle products are widely known across the cubing community to be of the highest quality, and many of the most successful and high-profile competitors worldwide use them. Cubicle's cube products have set hundreds of continental and world records in official speedcubing competitions. Several members of Cubicle's management team have been or are among the top cubing competitors nationally and internationally.

II.     Rubik's Four Invalid Trademark Registrations

11.     Upon information and belief, Rubik's licenses various intellectual property rights related to the "Rubik's Cube," a 3-D combination puzzle invented in or about 1974 by a Hungarian professor of architecture, Ernö Rubik.

12.     Upon information and belief, Rubik's owns U.S. Trademark Registration Numbers 1,265,094 ("'094 Registration") and 2,285,794 ("'794 Registration") and U.S. Registration Numbers 5,372,063 ("'063 Registration") and 5,319,331 ("'331 Registration"), each and all of which are design marks depicting a Rubik's Cube.  Hereinafter, the '094 Registration, '794 Registration, '063 Registration, and '331 Registration, together, are collectively referred to as "Rubik's Trademarks."  Copies of each and all of these Registrations are annexed as Exhibit A.

      A.     <u>Fraudulent Procurement of the '094 Registration</u>

13.     Upon information and belief, during the 1970s, Ernő Rubik invented various three-dimensional puzzle cubes, and he and his assigns thereupon began applying for patents.

14.     On or about January 30, 1975, Mr. Rubik and his assigns filed in Hungary for a patent on a puzzle cube.  As a result, Hungarian Patent No. 170062 ("'062 Hungarian Patent") was published on or about March 28, 1977 and disclosed a three-dimensional puzzle cube that could twist and turn.

15.     On or about March 10, 1981, Mr. Rubik and his assigns filed in Belgium for a patent on a puzzle cube.  As a result, Belgian Patent No. 887875 ("'875 Belgian Patent") was published on or about July 1, 1981 and disclosed a three-dimensional puzzle cube that could twist and turn.

16.     On or about August 3, 1981, Mr. Rubik and his assigns filed in the United States for a patent on a puzzle cube.  As a result, U.S. Patent No. 4,378,116 ("'116 U.S. Patent") was issued on or about March 29, 1983 and disclosed a three-dimensional puzzle cube that could twist and turn.  Hereinafter, the '062 Hungarian Patent, '875 Belgian Patent, and '116 U.S. Patent, together, are collectively referred to as "Rubik's Patents."

17.     Upon information and belief, certain, and perhaps all, of the Rubik's Patents have expired.

18.     Upon information and belief, in or about 1981, Ideal Toy Corporation ("Ideal") entered into an exclusive licensing agreement with Mr. Rubik and/or his assigns to market and sell the puzzle cubes covered in the Rubik's Patents.

19.     Upon information and belief, Ideal was aware of the applications that gave rise to all three Rubik's Patents prior to and as of Ideal entering into this exclusive licensing agreement.

20.     Upon information and belief, Ideal was aware of all three Rubik's Patents upon or shortly after publication and/or issuance of those Patents.

21.     On or about April 5, 1982, Ideal filed U.S. Application No. 73/358,308 ("'308 Application") with the U.S. Patent & Trademark Office ("USPTO") to register a puzzle cube design as a trademark.

22.     On or about July 27, 1982, the trademark examining attorney ("Examiner") initially refused registration, because "the design sought to be registered appears to be the configuration of applicant's goods and the configuration appears to be primarily functional in nature."

23.     On or about September 3, 1982, Ideal traversed the refusal, claiming "the mere fact that the mark consists of the design of an article does not mean that design cannot function to identify the source of the article and be protected as a trademark."

24.     On or about September 20, 1982, the USPTO recorded Ideal's assignment of the '308 Application to CBS, Inc. ("CBS").

25.     Upon information and belief, thereafter, on or about a date unknown to Cubicle, Ideal assigned to CBS its aforementioned licensing agreement with Mr. Rubik and/or his assigns.

26.     Upon information and belief, CBS was aware of the applications that gave rise to the three Rubik's Patents prior to and as of receiving from Ideal this assignment of the '308 Application.

27.     Upon information and belief, CBS was aware of the three Rubik's Patents upon or shortly after publication and/or issuance of those Patents.

28.     In a non-final office action, dated January 17, 1983, the Examiner reiterated that "[r]egistration has been refused on the grounds that the design sought to be registered appears to be the configuration of the applicant's goods and the configuration appears to be primarily functional in nature."   The Examiner further ordered that the "[a]pplicant must set forth the registration numbers of any patents which cover the goods in the application."   In addition, the Examiner also asked for "any patents which cover the goods in the application."

29.     On or about May 25, 1983, CBS responded to the January 17, 1983 non-final office action.   Rather than providing the requesting Examiner with the relevant patent registration numbers, CBS cited and quoted from two court decisions reportedly finding the puzzle cube design non-functional and, according to CBS, "determinative as to the issue of non-functionality."   CBS also quoted the following passage from an ITC opinion mistakenly stating that there were no utility patents disclosing the utilitarian advantage of the puzzle cube design:

> We determine that the overall appearance of Ideal's Rubik's Cube is nonfunctional. When the Morton-Norwich criteria are examined, it is clear that the design of Rubik's Cube is not functional. **There are no utility patents disclosing the utilitarian advantage of the design sought to be registered as a trademark.** In fact, the original Hungarian patent covering Professor Rubik's invention itself suggests the use of illustrations or numbers rather than colors. Ideal's advertising does not tout the utilitarian advantages of its design. There are also numerous alternatives available to the design adopted by Ideal including colored circles, triangles, or a clear plastic-based cube. Finally, there are no indications that Ideal's particular design results from a comparatively simple or cheap method of manufacturing. We, therefore, conclude that a trademark in the

6

design of Ideal's Rubik's Cube would not impair competition in the United States by depriving other companies of various alternatives (emphasis added).

30.     The language quoted by CBS refers to the '062 Hungarian Patent but does not list it by number and does not mention either the '875 Belgian Patent or '116 U.S. Patent at all.

31.     Based on the above representations, the Examiner approved the puzzle cube design of the '308 Application for publication.  On or about November 1, 1983, the USPTO published the mark for opposition.

32.     On or about January 24, 1984, the puzzle cube design of the '308 Application was registered as the '094 Registration.  A copy of the full file history of the '094 Registration is annexed as Exhibit B.

33.     The goods in the '094 Registration that issued from the '308 Application are listed as "three dimensional puzzles."

34.     Since the '062 Hungarian Patent was published over five years before the Examiner's request and disclosed a three-dimensional puzzle cube, said Patent covers the goods in the '094 Registration.

35.     Since the '875 Belgian Patent was published over 18 months before the Examiner's request and also disclosed a three-dimensional puzzle cube, said Patent also covers the goods in the '094 Registration.

36.     Because the '116 U.S. Patent was allowed some three months before the Examiner's request, was issued some three months before CBS responded to that request, and also disclosed a three-dimensional puzzle cube, in which squares covering the cube could be maneuvered and logically ordered, said Patent also covers the goods in the '094 Registration.

37.     Accordingly, CBS should have provided the Rubik's Patents to the Examiner upon her January 17, 1983 request.  CBS did not.  Therefore, CBS made material omissions of fact in the '308 Application.

38.     Upon information and belief, CBS knew or should have known about the Rubik's Patents and their relevance to the '308 Application that resulted in the '094 Registration but chose not to disclose them.

39.     Upon information and belief, CBS withheld the Rubik's Patents from the Examiner in the '308 Application process because of their importance to the Examiner's ongoing questions about functionality.

40.     Upon information and belief, the Examiner allowed the '094 Registration to issue in part owing to CBS's material omissions of fact.  Had the Examiner been aware of and studied the Rubik's Patents, she would have known that her concerns about functionality were sound and legitimate and refused registration.

41.     As described above, notwithstanding the fraud perpetrated on the USPTO, Rubik's now wields the '094 Registration to anticompetitive effect by suing puzzle cube sellers such as Cubicle.

B.     Fraudulent Procurement of the '063 Registration

42.     As alleged above, on or about January 9, 2018, Rubik's obtained the '063 Registration.  A copy of the full file history of that Registration is annexed as Exhibit C.

43.     The application for the '063 Registration sought protection in all of the following classifications of goods and services, among others:

- IC 003. US 001 004 006 050 051 052. G & S: "Animal grooming preparations in the nature of non-medicated grooming preparations for cats and dogs . . .";

- IC 005. US 006 018 044 046 051 052. G & S: "Dietary supplements and dietetic preparations . . .";

- IC 009. US 021 023 026 036 038. G & S: "Nautical apparatus and instruments . . .";

- IC 012. US 019 021 023 031 035 044. G & S: "Cars, motorcycles; motors and engine for cars and motorcycles . . .";

- IC 014. US 002 027 028 050. G & S: "Gemstones, pearls and precious metals . . .";

- IC 016. US 002 005 022 023 029 037 038 050. G & S: "Adhesive tapes for stationery or household purposes . . .";

- IC 018. US 001 002 003 022 041. G & S: "Backpacks; bags, envelopes, and pouches of leather for packaging . . .";

- IC 020. US 002 013 022 025 032 050. G & S: "Furniture, mirrors, picture frames, display boards, decorations of plastic for foodstuffs . . .";

- IC 021. US 002 013 023 029 030 033 040 050. G & S: "Combs, toilet brushes, water troughs, thermal insulated containers for food, cat litter pans . . .";

- IC 024. US 042 050. G & S: "Fabric for underwear, upholstery fabrics, bath linen except clothing, canvas for tapestry or embroidery . . .";

- IC 025. US 022 039. G & S: "Clothing, namely, bathing suits and swimwear . . .";

- IC 029. US 046. G & S: "Animal fat-based snack foods; Bean-based snack foods; Candied fruit snacks; Chicken nuggets . . .";

- IC 030. US 046. G & S: "Almond cake; Bakery goods and dessert items, namely, cakes, cookies, pastries, candies, and frozen confections for retail and wholesale distribution and consumption on or off the premises . . .";

- IC 032. US 045 046 048. G & S: "Beers, mineral and aerated waters, non-alcoholic drinks . . .";

- IC 034. US 002 008 009 017. G & S: "Tobacco, matches, match boxes, not of precious metal, cigar and cigarette cases, not of precious metal . . .";

- IC 035. US 100 101 102. G & S: "Advertising and marketing, administration of cultural and educational exchange programs . . .";

- IC 038. US 100 101 104. G & S: "Telecommunication services, namely, personal communication services, paging services, radio communication . . ."; and

- IC 042. US 100 101. G & S: "Scientific research, industrial research, namely, in the field of manufacture planning, computer programming for others . . . ."

44.     To obtain the '063 Registration, Rubik's affirmatively and falsely represented to the USPTO that it was using its proposed trademark in commerce to identify the source of all of the aforementioned goods and services.  Upon information and belief, Rubik's has not been and is not involved in any way with most, if not all, of the aforementioned goods and has not engaged and does not engage in most, if not all, of the aforementioned services.  Further, at the time Rubik's applied for the '063 Registration, Rubik's had no reasonable expectation that it would use its trademark to identify the source of most, if not all, of the goods and services listed in that application. Thus, Rubik's application for the '063 Registration has perpetrated a fraud on the USPTO.

C.      Fraudulent Procurement of the '331 Registration

45.      As alleged above, on or about October 31, 2017, Rubik's obtained the '331 Registration.  The full file history of that Registration is annexed as Exhibit D.

46.      The application for the '331 Registration sought protection in all of the following classifications of goods and services, among others:

- IC 003. US 001 004 006 050 051 052. G & S: "Animal grooming preparations in the nature of non-medicated grooming preparations for cats and dogs . . .";

- IC 005. US 006 018 044 046 051 052. G & S: "Dietary supplements and dietetic preparations . . .";

- IC 009. US 021 023 026 036 038. G & S: "Nautical apparatus and instruments . . .";

- IC 012. US 019 021 023 031 035 044. G & S: "Cars, motorcycles; motors and engine for cars and motorcycles . . .";

- IC 014. US 002 027 028 050. G & S: "Gemstones, pearls and precious metals . . .";

- IC 016. US 002 005 022 023 029 037 038 050. G & S: "Adhesive tapes for stationery or household purposes . . .";

- IC 018. US 001 002 003 022 041. G & S: "Backpacks; bags, envelopes, and pouches of leather for packaging . . .";

- IC 020. US 002 013 022 025 032 050. G & S: "Furniture, mirrors, picture frames, display boards, decorations of plastic for foodstuffs . . .";

- IC 021. US 002 013 023 029 030 033 040 050. G & S: "Combs, toilet brushes, water troughs, thermal insulated containers for food, cat litter pans . . .";

- IC 024. US 042 050. G & S: "Fabric for underwear, upholstery fabrics, bath linen except clothing, canvas for tapestry or embroidery . . .";

- IC 025. US 022 039. G & S: "Clothing, namely, bathing suits and swimwear . . .";

- IC 029. US 046. G & S: "Animal fat-based snack foods; Bean-based snack foods; Candied fruit snacks; Chicken nuggets . . .";

- IC 030. US 046. G & S: "Almond cake; Bakery goods and dessert items, namely, cakes, cookies, pastries, candies, and frozen confections for retail and wholesale distribution and consumption on or off the premises . . .";

- IC 032. US 045 046 048. G & S: "Beers, mineral and aerated waters, non-alcoholic drinks . . .";

- IC 034. US 002 008 009 017. G & S: "Tobacco, matches, match boxes, not of precious metal, cigar and cigarette cases, not of precious metal . . .";

- IC 035. US 100 101 102. G & S: "Advertising and marketing, administration of cultural and educational exchange programs . . .";

- IC 038. US 100 101 104. G & S: "Telecommunication services, namely, personal communication services, paging services, radio communication . . ."; and

- IC 042. US 100 101. G & S: "Scientific research, industrial research, namely, in the field of manufacture planning, computer programming for others . . . ."

47. To obtain the '331 Registration, Rubik's falsely and affirmatively represented to the USPTO that it was using its proposed trademark in commerce to identify the source of all of the aforementioned goods and services. Upon information and belief, Rubik's has not been and is not involved in any way with most, if not all, of the aforementioned goods and has not engaged and does not engage in most, if not all, of the aforementioned services. Further, at the time

Rubik's applied for the '331 Registration, Rubik's had no reasonable expectation that it would use its trademark to identify the source of most, if not all, of the goods and services listed in that application. Thus, Rubik's application for the '331 Registration has perpetrated a fraud on the USPTO.

        D.    <u>Functionality of All Four Rubik's Trademarks</u>

48.    The features of the '094 Registration and '794 Registration (<u>e.g.</u>, "a black cube having nine color patches on each of its six faces") are essential to the use and purpose of its puzzle cube (<u>i.e.</u>, solving the cube).

49.    The '094 Registration and '794 Registration consist of "a black cube having nine color patches on each of its six faces with the color patches on each face being the same and consisting of the colors red, white, blue, green, yellow, and orange."

50.    The '063 Registration consists of "a stylized cube displaying three sides; each side having nine equal squares, shown three by three."

51.    The '331 Registration consists of "a cube with three sides, with each side consisting of three rows of three squares, each separated by a black line and the left side being blue squares, the right side being red squares and the top being yellow squares."

52.    Rubik's describes its puzzle cube on its website as a "solid cube" that can "twist[] and turn[]" but still not break A true and correct copy of a portion of Rubik's website entitled "The History of the Rubik's Cube" is annexed as Exhibit E.

53.    Rubik's shows its puzzle cube being scrambled and solved by color on its online store:



A true and correct copy of a portion of Rubik's website entitled "Rubik's Speed Cube – for ultimate speedcubing performance" is annexed as Exhibit F.

54.     Rubik's provides "Solving Guides" on its website instructing players to use the puzzle cube's colors to solve the puzzle. A true and correct copy of a portion of Rubik's website entitled "How to solve the 3x3 Rubik's cube?" is annexed as Exhibit G.

55.     Further, the features of all four of Rubik's Trademarks are the subject of utility patents.

56.     As alleged above, prior to Rubik's predecessors-in-interest (Ideal and CBS) seeking registration of trademarks related to Rubik's puzzle cube, Ernö Rubik and his assignees sought and obtained patent protection for his three-dimensional puzzle cube and other similar inventions.

57.     Upon information and belief, as alleged above, the '062 Hungarian Patent was filed for on or about January 30, 1975 and published on or about March 28, 1977.  A copy of that Patent is annexed as Exhibit H and discloses a three-dimensional puzzle cube that can twist and turn, as depicted below:



58.    Upon information and belief, as alleged above, the '875 Belgian Patent was filed for on or about March 10, 1981 and published on or about July 1, 1981.  A copy of that Patent is annexed as Exhibit I and depicts a three-dimensional puzzle cube that can twist and turn, as depicted below:

POLITECHNIKA Ipari Szövetkezet



Fig.1    Fig.2

Fig.3    Fig. 4

Bruxelles, le 10 mars 1981
P.Pon. Politechnika Ipari Szövetkezet
P.Pon. CABINET BEDE R. van Schoonbeek

59.    As alleged above, the '116 U.S. Patent was filed on or about August 3, 1981 and issued on or about March 29, 1983.  A copy of that Patent is annexed as Exhibit J and discloses "a spatial logical toy." The '116 U.S. Patent, likewise, depicts a three-dimensional puzzle cube with elements in the shape of small cubes that may be colored to assemble them in a predetermined order, as follows:

16

The toy elements, in the shape of small cubes, may be turned along the spatial axes of the cube by means of connecting elements arranged in the geometric center on the large cube. The surfaces of the small cubes forming each surface of the large cube are colored or carry numbers, figures or any other symbols which can be assembled into the predetermined logical order or sequence by simultaneously rotating the nine toy elements forming the surfaces of the "large cube."

60.     Accordingly, Rubik's puzzle cube design is utilitarian functional and so is not entitled to trademark protection.

E.      Competing Cube Products to the Market – Genericness

61.     A search on Amazon.com for "puzzle cube" reveals numerous puzzle cubes for sale consisting of a black cube with right-angled smaller internal cubes that can twist and turn with matching color patches, including:

| KickFire Kube Speed Cube | INIL 3x3x3order cube puzzle |
|---|---|
|  | |

| ShengShou 3x3x3 Puzzle Cube | Speed Cube 3x3 |
|---|---|
|  | |

The Amazon.com pages for these four examples of puzzle cubes are annexed as Exhibits K, L, M, and N, respectively.

62.     The introduction of numerous competing cube products into the market has caused the puzzle cube design depicted in the Rubik's Trademarks to (a) become the generic designation for puzzle cubes consisting of a black cube with right-angled smaller internal cubes that can twist and turn with matching color patches, and/or (b) otherwise lose its significance as a mark.

63.     Additionally, owing to the flooding of competing cube products into the market, consumers do not recognize Rubik's as the sole source of puzzle cubes; that is, Rubik's puzzle cube design has come to refer to puzzle cubes themselves rather than to the source of puzzle cubes.

F.     Rubik's Lawsuits Commenced in this Court

64.     Upon information and belief, Rubik's has attempted to enforce its Rubik's Trademarks by commencing several lawsuits in this Court, alleging infringements of the '094 Registration and '794 Registration, including but not limited to: (i) *Rubik's Brand Ltd. v.*

*Merchsource, LLC, et al.*, Index No. 15-cv-09751-VEC; and (ii) *Rubik's Brand Ltd. v. Flambeau, Inc., et al.*, Index No. 17-cv-06559-PGG.

65.     Furthermore, on or about October 11, 2017, Rubik's filed a Complaint in this Court, asserting that Cubicle had also infringed the '094 Registration and '794 Registration. *See Rubik's Brand Ltd. v. Cubicle Enterprises LLC d/b/a TheCubicle*, Index No. 17-cv-07819-PAE. On or about January 25, 2018, Rubik's filed a Notice of Voluntary Dismissal of that action against Cubicle, without prejudice.

G.     Rubik's Attempts to "Tie-Out" Cubicle Products from the Market

66.     In addition to commencing actions in this Court alleging infringement of the '094 Registration, which was fraudulently procured, Rubik's has attempted to use the Rubik's Trademarks to "tie-out" Cubicle's products from the market.

67.     Indeed, during business negotiations between Cubicle and Rubik's, Rubik's has attempted to "tie-out" certain Cubicle products from the market by permitting Cubicle to license Rubik's products, but only if Cubicle would agree to forego all business activities related to an extremely wide range of products over which Rubik's holds no trademark or patent rights whatsoever, and by threatening to sue Cubicle, if it is not willing to accede to Rubik's unlawful demands, for supposedly violating Rubik's purported trademark rights, when Rubik's knew that it had and has no such widespread trademark rights.

H.     Rubik's Attempt to Limit Competitive Cubing Events

68.     Rubik's has wrongly used the aforesaid trademarks to threaten Cubicle and other potential sponsors and organizers of competitive cubing events, asserting that use or promotion of certain cube products, and cube products of third parties, in such events would violate Rubik's purported trademark rights. In so doing, Rubik's has limited the growth of competitive cubing by

blocking and/or attempting to block competitive cubing events that received sponsorship support from retailers and manufacturers of cube products other than those made under license from Rubik's.

I.     <u>Rubik's Illegal Licensing Program</u>

69.     Upon information and belief, Rubik's has engaged in a licensing program pursuant to which it demands that any company which manufactures, distributes, markets, and sells any cube product in the United States and worldwide enter into a license agreement pursuant to which Rubik's receives royalty payments or similar compensation. Upon expiration of certain of the Rubik's Patents, all such license agreements became illegal and unenforceable, because the trademarks covered by such license agreements have been at all times invalid and unenforceable.  Rubik's knew or should have known that it was improperly and wrongfully extracting royalty payments and other compensation under such license agreements, because the trademarks licensed thereunder were at all times invalid and unenforceable.

70.     As a result of Rubik's anticompetitive activities alleged herein, the markets for cube products and competitive cubing events in the United States and worldwide have been unreasonably restrained and/or monopolized.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

**(Declaratory Judgment of Non-Infringement of
the '094 Registration, '794 Registration,
'063 Registration, and '331 Registration)**

71.     Cubicle realleges and restates Paragraph 1 through 70 as if fully set forth herein.

72.     On or about October 11, 2017, Rubik's filed a Complaint against Cubicle in this Court, alleging, in part, registered trademark infringement under 15 U.S.C. § 1114.

73.     Rubik's subsequently withdrew that Complaint, without prejudice.

74.     By reason of Rubik's efforts to prevent the advertising, manufacturing, production, distribution, and any other use of Cubicle's twist puzzle cube products by previously filing suit against Cubicle and later withdrawing that suit, there now exists between the parties an actual and justiciable controversy concerning whether Cubicle has infringed any alleged rights of Rubik's requiring declaratory relief.

75.     A Declaration is necessary and appropriate at this time to affirm Cubicle's rights to advertise, manufacture, produce, distribute, or otherwise use its twist puzzle cube products.

76.     All of the Rubik's Trademarks are invalid for various reasons, as alleged herein.

77.     There is no likelihood of confusion between Cubicle's twist puzzle cube products and Rubik's alleged puzzle cube design, in part because the parties' respective puzzle cubes are not similar in appearance.  Additionally and critically, both Cubicle and Rubik's prominently display their brand names in promoting and selling their respective goods.

78.     For the reasons stated in this Complaint, Cubicle's advertising, manufacturing, production, distribution, and all other uses of its twist puzzle cube products do not violate any of Rubik's rights under federal as to the Rubik's Trademarks.

79.     Accordingly, Cubicle is entitled to a Declaratory Judgment that it is not infringing, has not infringed, and is not liable for infringing any of Rubik's alleged rights, if any, as to the Rubik's Trademarks.

## SECOND CAUSE OF ACTION

### (Cancellation of the '094 Registration, '794 Registration, '063 Registration, and '331 Registration for Utilitarian Functionality)

80.     Cubicle realleges and restates Paragraph 1 through 70 as if fully set forth herein.

81.     Because the features of Rubik's Trademarks, particularly the colors, are essential to the use and purpose of the puzzle cube, those marks are utilitarian functional.

82.     In addition, the fact that the Rubik's Patents cover the features of Rubik's Trademarks also demonstrates that the marks are utilitarian functional.

83.     Accordingly, Rubik's puzzle cube design is utilitarian functional and so is not entitled to trademark protection  The registrations for Rubik's Trademarks are, therefore, invalid and so should be cancelled.

## THIRD CAUSE OF ACTION

### (Cancellation of the '094 Registration, '794 Registration, '063 Registration, and '331 Registration for Genericness)

84.     Cubicle realleges and restates Paragraph 1 through 70 as if fully set forth herein.

85.     As set forth above, Rubik's has allowed dozens of other puzzle cubes to saturate the puzzle cube market.

86.     Accordingly, consumers do not recognize Rubik's as the sole source of puzzle cubes.  In fact, Rubik's puzzle cube design has come to refer to puzzle cubes themselves rather

than the source of puzzle cubes.   Thus, Rubik's puzzle cube design has lost its distinctive significance as an identification of source.

87.     Because Rubik's puzzle cube design is not source identifying, it is generic and not entitled to trademark protection.

88.     The registrations for Rubik's Trademarks are, therefore, not valid and/or protectable and so should be cancelled.

## FOURTH CAUSE OF ACTION

**(Cancellation of Trademark Registration
for False or Fraudulent Procurement of
the '094 Registration)**

89.     Cubicle realleges and restates Paragraph 1 through 70 as if fully set forth herein.

90.     As set forth above, CBS, Rubik's predecessor-in-interest to the '094 Registration, failed to disclose the Rubik's Patents to the USPTO, despite CBS's knowledge of those Patents upon or shortly after their publication and/or issuance.

91.     Upon information and belief, CBS intended to induce the Examiner to rely on CBS's failure to disclose the Rubik's Patents, so that the Examiner would not reject the '308 Application for the '094 Registration on the basis of functionality.

92.     Upon information and belief, the Examiner reasonably relied on CBS's failure to disclose the Rubik's Patents and allowed the '094 Registration to issue partly because of CBS's material omissions of fact. Had the Examiner seen and studied the Rubik's Patents, she would have known that her concerns about functionality were sound and legitimate and refused registration.

93.     CBS's failure to disclose the Rubik's Patents to the USPTO was carried out with fraudulent intent.

94.     Despite the fraud perpetrated on the USPTO, Rubik's now wields the '094 Registration to anticompetitive effect by suing puzzle cube sellers such as Cubicle.

95.     Consequently, Rubik's ownership and enforcement of the '094 Registration has damaged and will continue to damage Cubicle.

96.     Accordingly, owing to the fraud perpetrated by CBS on the USPTO, Rubik's '094 Registration is invalid and so should be cancelled.

## FIFTH CAUSE OF ACTION

**(Cancellation of Trademark Registration
for Fraudulent Procurement of
the '063 Registration)**

97.     Cubicle realleges and restates Paragraph 1 through 70 as if fully set forth herein.

98.     The application for the '063 Registration sought protection for many and varied goods and services listed in the application, set forth in Paragraph 43 above.

99.     To obtain the '063 Registration, Rubik's falsely and affirmatively represented to the USPTO that it had been using its trademark in commerce to identify the source of all of the many and varied goods and services listed in the application, set forth in Paragraph 43 above.

100.    Upon information and belief, Rubik's has not been and is not involved with most, if not all, of those listed goods and has not been and is not engaged in most, if not all, of those listed services and thus has perpetrated fraud on the USPTO.

101.    Upon information and belief, Rubik's sought protection for the many and varied goods and services with fraudulent intent, because it had no reasonable expectation that it would become involved with most, if not all, of the listed goods and become engaged with most, if not all, of those listed services.

102.    Upon information and belief, Rubik's intended to induce the USPTO to act in reliance on its affirmative misrepresentations, so that the USPTO would issue a trademark covering the goods and services listed therein.

103.    Upon information and belief, the USPTO, in issuing the '063 Registration, reasonably relied on Rubik's misrepresentations in its application for the '063 Registration, notwithstanding the fact that Rubik's had no reasonable expectation that it would become involved with most, if not all, of those listed goods and engaged in most, if not all, of those listed services.

104.    Cubicle has suffered damages resulting from the USPTO's reliance on Rubik's fraudulent misrepresentations in its application for the '063 Registration because Rubik's has relied on the '063 Registration and its other purported trademark rights to unlawfully preclude Cubicle's products from entering the cube puzzle market.

105.    The '063 Registration is, therefore, invalid and so should be cancelled.

## SIXTH CAUSE OF ACTION

### (Cancellation of Trademark Registration
### for Fraudulent Procurement of
### the '331 Registration)

106.    Cubicle realleges and restates Paragraph 1 through 70 as if fully set forth herein.

107.    The application for the '331 Registration sought protection for many and varied goods and services listed in the application, as set forth in Paragraph 46 above.

108.    To obtain the '331 Registration, Rubik's falsely and affirmatively represented to the USPTO that it had been using the trademark in commerce to identify the source of all of the many and varied goods and services listed in the application, as set forth in Paragraph 46 above.

109.   Upon information and belief, Rubik's has not been and is not involved with most, if not all, of those listed goods and has not been and is not engaged in most, if not all, of those listed services.  Rubik's, thus, has perpetrated fraud on the USPTO.

110.   Upon information and belief, Rubik's sought protection for all the goods and services with fraudulent intent, because it had no reasonable expectation that it would become involved with most, if not all, of those listed goods and engaged in most, if not all, of those listed services.

111.   Upon information and belief, Rubik's intended to induce the USPTO to act in reliance on its affirmative misrepresentations, so that the USPTO would issue a trademark covering the goods and services listed therein.

112.   Upon information and belief, the USPTO, in issuing the '331 Registration, reasonably relied on Rubik's misrepresentations in its application for the '331 Registration, notwithstanding the fact that Rubik's had no reasonable expectation that it would become involved with most, if not all, of those listed goods and engaged in most, if not all, of those listed services.

113.   Cubicle has suffered damages resulting from the USPTO's reliance on Rubik's fraudulent misrepresentations in its application for the '331 Registration, because Rubik's has relied on the '331 Registration and its other purported trademark rights to unlawfully preclude Cubicle's products from entering the cube puzzle market.

114.   The '331 Registration is, therefore, invalid and so should be cancelled.

## SEVENTH CAUSE OF ACTION

### (Violations of the Sherman Act, 15 U.S.C. § 2, and Clayton Act, 15 U.S.C. § 15)

115.    Cubicle realleges and restates Paragraph 1 through 70 as if fully set forth herein.

116.    As alleged above, CBS fraudulently procured the '094 Registration.

117.    Upon information and belief, Rubik's had knowledge of CBS's fraudulent procurement of the '094 Registration.

118.    Rubik's has attempted to enforce the fraudulently procured '094 Registration by commencing trademark infringement actions in this Court against Cubicle and other parties.

119.    By unlawfully attempting to stifle competition through unfounded trademark infringement actions relying upon the '094 Registration, Rubik's has committed fraud under the *Walker Process* doctrine in contravention of the Sherman Act, 15 U.S.C. § 2.

120.    Rubik's has also violated the Clayton Act, 15 U.S.C. 15 U.S.C. § 15, by threatening to use its alleged trademark rights to "tie-out" Cubicle products from the market. Rubik's has done so by effectively telling Cubicle that it can license Rubik's products only if Cubicle agrees to forego all of its business activities related to an extremely wide range of products over which Rubik's holds no trademark or other rights, and then by threatening to sue Cubicle, if it is not willing to accede to Rubik's unlawful demands, for supposedly violating Rubik's purported trademark rights, when, in fact, and as Rubik's knows, Rubik's has no such widespread trademark rights.

121.    Rubik's has further violated the Clayton Act, 15 U.S.C. § 15 by (a) wrongly using its invalid and unenforceable trademarks to threaten Cubicle and other potential sponsors of competitive cubing events, asserting that promotion of certain products of third parties in such events would violate Rubik's purported trademark rights. In so doing, Rubik's has limited the

27

growth of competitive cubing by blocking and/or attempting to block competitive cubing events permitting use of cube products other than those made by Rubik's or made under license from Rubik's, and (b) operating a licensing program under which it demands that any company which manufactures, distributes, markets and sells any cube product in the United States and worldwide enter into a license agreement pursuant to which Rubik's would receive and receives royalty payments or similar compensation. Upon expiration of the Rubik's Patents, all such license agreements became illegal and unenforceable, because the trademarks covered by such license agreements have been at all times invalid and unenforceable, and because even Rubik's has repeatedly admitted that its trademarks did not cover every possible cube puzzle product. Rubik's knew or should have known that it was improperly and wrongfully extracting royalty payments and other compensation under such license agreements, because the trademarks licensed thereunder were at all times invalid and unenforceable, and because Rubik's insisted that licensees pay royalties on products that are not covered by valid and enforceable intellectual property rights owned by Rubik's.

122.    As a result of Rubik's anticompetitive activities alleged herein, the markets for cube products and competitive cubing events in the United States and worldwide have been unreasonably restrained or monopolized.

123.    Cubicle has been injured in its business by reason of Rubik's antitrust violations alleged herein.  These injuries consist of the effects of price gouging and the stifling of Cubicle's ability to sell its products.

124.    Cubicle seeks damages and multiple damages as permitted by law for its injuries caused by Rubik's violations of antitrust law.

## PRAYER FOR RELIEF

125.   **WHEREFORE**, plaintiff Cubicle seeks and prays for a Judgment against defendant Rubik's awarding Cubicle various relief, as follows:

- A Declaration that Cubicle has not infringed any valid and enforceable federal trademark rights owned by Rubik's;

- A Declaration that the '094 Registration, '794 Registration, '063 Registration, and '331 Registration are invalid and/or not protectable;

- A Declaration that the '094 Registration, '063 Registration, and '331 Registration were procured fraudulently;

- A Declaration ordering the USPTO to cancel of the '094 Registration, '794 Registration, '063 Registration, and '331 Registration in their entirety under 15 U.S.C. §§ 1119 and/or 1120;

- Damages adequate to compensate Cubicle for Rubik's attempted enforcement of its fraudulently procured registered trademarks;

- Treble damages for Rubik's violations of the Sherman and Clayton Acts;

- Costs and expenses, including attorneys' fees, pursuant to 15 U.S.C. § 1117 or other applicable authority;

- Pre-Judgment and Post-Judgment interest; and

- Such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

126.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Cubicle hereby

demands trial by jury on all issues raised by this Complaint.

Dated: New York, New York
       February 2, 2018

BARTON LLP

By: _____
       Maurice N. Ross (MR 6852)

420 Lexington Avenue, 18th Floor
New York, NY 10170
mross@bartonesq.com
*Tel.:* (212) 687-6262
*Fax:* (212) 687-3667

*Attorneys for Plaintiff*