**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **CUBICLE ENTERPRISES LLC, d/b/a TheCubicle,**<br><br>                    **Plaintiff,**<br><br>                    -against-<br><br>**RUBIK'S BRAND LIMITED,**<br><br>                    **Defendant.** | **Case Number 1:18-cv-00963 (JPO)**<br><br>**JURY TRIAL DEMAND**<br><br>**AMENDED COMPLAINT** |

        Plaintiff Cubicle Enterprises LLC, d/b/a TheCubicle, by its undersigned counsel, Barton

LLP, as and for its Amended Complaint against defendant Rubik's Brand Limited, respectfully

alleges as follows:

## NATURE OF THE ACTION

        1.        Plaintiff brings this action for (i) a Declaratory Judgment, pursuant to 28 U.S.C. §

2201, that it has not violated and is not violating any of defendant's five purported trademark

registrations under federal law; (ii) cancellation of all five of those purported registrations, under

15 U.S.C. §1119, on the grounds that those marks have for years been and are now generic; (iii)

cancellation of four of those purported registrations, also under 15 U.S.C. § 1119, for utilitarian

functionality; (iv) cancellation of four of those purported registrations, under 15 U.S.C. § 1120,

owing to defendant's fraudulent procurements thereof; (v) cancellation of three of defendant's

purported trademark registrations, also under 15 U.S.C. § 1120, because of defendant's

fraudulent renewals of those purported registrations; and (vi) compensatory and treble damages,

pursuant to 15 U.S.C. §§ 1, 2, in light of defendant's Sherman Act violations and, pursuant to 15

U.S.C. § 15, as a result of defendant's contraventions of the Clayton Act, for, inter alia, its

threats and attempts to enforce invalid trademark registrations and other egregious, anticompetitive conduct over many years.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this action pursuant to: (a) 15 U.S.C. § 1051 *et seq.* and 28 U.S.C. §§ 2201(a) and 2202, because plaintiff seeks a trademark-related Declaratory Judgment; (b) 28 U.S.C. § 1331, since this action raises federal questions concerning trademark and antitrust laws; (c) 28 U.S.C. § 1338, as this suit relates to trademarks; and (d) 15 U.S.C. § 15, because plaintiff alleges injury under federal antitrust laws.

3.      This Court has personal jurisdiction over defendant, which regularly conducts business in the State of New York and has the requisite contacts with that State and this forum.

4.      Venue is proper in this judicial District pursuant to 28 U.S.C. §§ 1391(b) and (c), since defendant is subject to personal jurisdiction within this District, and a substantial part of the events giving rise to the claims propounded herein has occurred and will continue to occur in this District.

## PARTIES

5.      Plaintiff Cubicle Enterprises LLC, d/b/a TheCubicle, ("Cubicle") is a limited liability company organized and existing under the laws of the State of New York with its principal place of business at 8 Westchester Plaza, Elmsford, New York 10523.

6.      Upon information and belief, defendant Rubik's Brand Limited ("Rubik's") is a limited liability company organized and existing under the laws of the United Kingdom with its principal place of business at 7 Lambton Place, London, England W11 2SH.

## PERTINENT FACTS

**I.      Cubicle and Its Business**

7.      Cubicle is a leading online specialty store launched in August 2011 that sells various cube puzzle products and accessories. Cubicle operates in the State of New York and has served hundreds of thousands of puzzle fans, from beginners to world champions.

8.      Cubicle is widely recognized as a major innovator and top contributor in the "speedcubing" community. Speedcubing involves the extremely expeditious solving of twist puzzle cube products and is a popular worldwide pastime and competitive sport.

9.      Over past seven years, Cubicle has played a significant role in developing speedcubing industry standards and pioneered several revolutionary products and accessories.

10.     "Cubicle" is regarded globally as one of the most prominent brands in speedcubing.

11.     Cubicle sponsors and participates in speedcubing competitions worldwide and often sells its products at vending booths at such competitions.

12.     Cubicle's cube puzzle products are widely known throughout the cubing community to be of the highest quality, and many of the most successful and high-profile competitors worldwide use them.

13.     Cubicle's products have set hundreds of continental and world records in official speedcubing competitions. In addition, several members of Cubicle's management team have been or are among the top cubing competitors nationally and internationally.

## II.    Rubik's Five Purported Trademarks

### A.    Basics

14.    Upon information and belief, Rubik's licenses various intellectual property rights related to the "Rubik's Cube," a 3-D combination puzzle invented in or about 1974 by a Hungarian professor of architecture, Ernö Rubik.

15.    Upon information and belief, Rubik's currently owns U.S. Trademark and Service Mark Registration Numbers 1,265,094 ("'094 Registration") and 2,285,794 ("'794 Registration") as well as U.S. Trademark Registration Numbers 5,319,331 ("'331 Registration"), 5,372,063 ("'063 Registration"), and 1,242,974 ("'974 Registration'"), the first four of which are design marks depicting a "Rubik's Cube" puzzle ("Rubik's' Purported Design Marks"), and the latter of which is a word mark as to the term "Rubik's Cube" ("Rubik's' Purported Word Mark"). Hereinafter, the '094 Registration, '794 Registration, '331 Registration, '063 Registration, and '974 Registration, together, are collectively referred to as "Rubik's' Purported Trademarks." Copies of records of the United States Patent and Trademark Office ("USPTO") reflecting each and all of these Registrations are annexed as Exhibit A.

### B.    Professor Rubik Obtains Patents as to his Cubes.

16.    Upon information and belief, during the 1970s, Professor Rubik invented various three-dimensional puzzle cubes, and he and his assigns thereupon began applying for patents.

17.    On or about January 30, 1975, Professor Rubik and his assigns filed in Hungary for a patent on a puzzle cube.

18.    As a result, Hungarian Patent Number 170062 ("'062 Hungarian Patent") was published on or about March 28, 1977 and disclosed a three-dimensional puzzle cube that could twist and turn, as depicted below:



19.    On or about March 10, 1981, Professor Rubik and his assigns filed in Belgium for a patent on a puzzle cube.

20.    As a result, Belgian Patent Number 887875 ("'875 Belgian Patent") was published on or about July 1, 1981 and disclosed a three-dimensional puzzle cube that could twist and turn, as depicted below:

POLITECHNIKA Ipari Szövetkezet



Bruxelles, le 10 mars 1981
P.Pon. Politechnika Ipari Szövetkezet
P.Pon. CABINET BEDE R. van Schoonbeek

21.    On or about August 3, 1981, Professor Rubik and his assigns filed in the United States for a patent on a puzzle cube.

22.    Consequently, U.S. Patent Number 4,378,116 ("'116 U.S. Patent") was issued on or about March 29, 1983 and disclosed a three-dimensional puzzle cube with elements in the

shape of small cubes that might be colored to assemble them in a predetermined order, as follows:

> The toy elements, in the shape of small cubes, may be turned along the spatial axes of the cube by means of connecting elements arranged in the geometric center on the large cube. The surfaces of the small cubes forming each surface of the large cube are colored or carry numbers, figures or any other symbols which can be assembled into the predetermined logical order or sequence by simultaneously rotating the nine toy elements forming the surfaces of the "large cube."

23.    Upon information and belief, some (and most likely all) of the '062 Hungarian Patent, '875 Belgian Patent, and '116 U.S. Patent have expired. Hereinafter, those three, together, are collectively referred to as "Rubik's' Patents."

**C.    Professor Rubik Licenses the Cubes Covered by Rubik's' Patents.**

24.    Upon information and belief, in or about 1980, Ideal Toy Corporation ("Ideal") entered into an exclusive licensing agreement with Professor Rubik and/or his assigns to market and sell the puzzle cubes covered in the Rubik's' Patents.

25.    Upon information and belief, Ideal was aware of the applications that gave rise to all three Rubik's' Patents prior to and as of Ideal entering into this exclusive licensing agreement.

26.    Upon information and belief, Ideal was aware of all three Rubik's' Patents upon or shortly after publication and/or issuance of those Patents.

**D.    Rubik's' Predecessor-in-Interest Procures the '974 Registration.**

27.    On or about May 8, 1980, Ideal, as Rubik's' predecessor-in-interest, filed U.S. Application Number 73/261351 ("'351 Application") with the USPTO to register the term "Rubik's Cube" as a word mark.

28.     On or about October 13, 1981, the USPTO published the '351 Application for opposition.

29.     On or about June 21, 1983, the words "Rubik's Cube" as set forth in the '351 Application were registered as the '974 Registration. See full USPTO file history of the '974 Registration, available on-line at

http://tsdr.uspto.gov/#caseNumber=1242974&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=documentSearch.

**E.     Rubik's Purported Design Marks Are and Always Have Been Utilitarian Functional.**

30.     In the wake of the expiration of Rubik's' Patents, Professor Rubik's successors-in-interest, such as Ideal, sought registration of purported trademarks related to the design of his puzzle cube. Upon information and belief, these applications for registration should never have been submitted or granted, because these purported trademarks have from the outset all been and are utilitarian functional.

31.     For instance, the features of the '094 Registrations and '794 Registration (e.g., "a black cube having nine color patches on each of its six faces") are essential to the use and purpose of its puzzle cube; to wit, solving the cube. Indeed, the '094 Registration and '794 Registration consist of "a black cube having nine color patches on each of its six faces with the color patches on each face being the same and consisting of the colors red, white, blue, green, yellow, and orange."

32.     The '063 Registration consists of "a stylized cube displaying three sides; each side having nine equal squares, shown three by three."

33.    The '331 Registration consists of "a cube with three sides, with each side consisting of three rows of three squares, each separated by a black line and the left side being blue squares, the right side being red squares and the top being yellow squares."

34.    Rubik's describes its puzzle cube on its website as a "solid cube" that can "twist[] and turn[]" but still not break A copy of a portion of Rubik's' website entitled "The History of the Rubik's Cube" is annexed as Exhibit B.

35.    Rubik's shows its puzzle cube being scrambled and solved by color on its online store, as depicted below:

   

A copy of a portion of Rubik's' website entitled "Rubik's Speed Cube – for ultimate speedcubing performance" is annexed as Exhibit C.

36.    Rubik's provides "Solving Guides" on its website instructing players to use the puzzle cube's colors to solve the puzzle. A copy of a portion of Rubik's' website entitled "How to solve the 3x3 Rubik's cube?" is annexed as Exhibit D.

37.    Further, upon information and belief, the features of all four of Rubik's' Purported Design Marks are the subject of utility patents.

38.    Accordingly, each and all four of Rubik's' Purported Design Marks -- the '094 Registration, '794 Registration, '331 Registration, and '063 Registration -- are and have always

been utilitarian functional and so are not entitled (and should never have been entitled) to trademark protection.

**F.    Rubik's Predecessor-in-Interest Fraudulently
        Procures the '094 Registration.**

39.    On or about April 5, 1982, Ideal, as Rubik's predecessor-in-interest, filed U.S. Application Number 73/358,308 ("'308 Application") with the USPTO to register a puzzle cube design as a trademark.

40.    On or about July 27, 1982, the trademark examining attorney ("Examiner") initially refused registration, because "the design sought to be registered appears to be the configuration of applicant's goods and the configuration appears to be primarily functional in nature."

41.    On or about September 3, 1982, Ideal traversed the refusal, claiming "the mere fact that the mark consists of the design of an article does not mean that design cannot function to identify the source of the article and be protected as a trademark."

42.    On or about September 20, 1982, the USPTO recorded Ideal's assignment of the '308 Application to CBS, Inc. ("CBS"), another of Rubik's predecessors-in-interest.

43.    Upon information and belief, thereafter, on or about a date unknown to Cubicle, Ideal assigned to CBS its aforementioned licensing agreement with Professor Rubik and/or his assigns.

44.    Upon information and belief, CBS was aware of the applications that gave rise to all three Rubik's Patents prior to and as of receiving from Ideal this assignment of the '308 Application.

45.    Upon information and belief, CBS was aware of all three Rubik's Patents upon or shortly after publication and/or issuance of those Patents.

46.    In a non-final office action, dated January 17, 1983, the Examiner reiterated that "[r]egistration has been refused on the grounds that the design sought to be registered appears to be the configuration of the applicant's goods and the configuration appears to be primarily functional in nature." The Examiner further ordered that the "[a]pplicant must set forth the registration numbers of any patents which cover the goods in the application." In addition, the Examiner also asked for "any patents which cover the goods in the application."

47.    On or about May 25, 1983, CBS responded to the January 17, 1983 non-final office action. Rather than providing the requesting Examiner with the relevant patent registration numbers, CBS cited and quoted from two court decisions reportedly finding the puzzle cube design non-functional and, according to CBS, "determinative as to the issue of non-functionality." CBS also quoted the following passage from an International Trade Commission opinion, mistakenly stating that there were no utility patents disclosing the utilitarian advantage of the puzzle cube design:

> We determine that the overall appearance of Ideal's Rubik's Cube is nonfunctional. When the Morton-Norwich criteria are examined, it is clear that the design of Rubik's Cube is not functional. **There are no utility patents disclosing the utilitarian advantage of the design sought to be registered as a trademark.** In fact, the original Hungarian patent covering Professor Rubik's invention itself suggests the use of illustrations or numbers rather than colors. Ideal's advertising does not tout the utilitarian advantages of its design. There are also numerous alternatives available to the design adopted by Ideal including colored circles, triangles, or a clear plastic-based cube. Finally, there are no indications that Ideal's particular design results from a comparatively simple or cheap method of manufacturing. We, therefore, conclude that a trademark in the design of Ideal's Rubik's Cube would not impair competition in the United States by depriving other companies of various alternatives (emphasis added).

48.    The language quoted by CBS referred to the '062 Hungarian Patent but did not list it by number and did not mention at all either the '875 Belgian Patent or '116 U.S. Patent.

11

49.    Based on the above representations, the Examiner approved the puzzle cube design of the '308 Application for publication.  On or about November 1, 1983, the USPTO published the mark for opposition.

50.    On or about January 24, 1984, the puzzle cube design of the '308 Application was registered as the '094 Registration.  See full USPTO file history of the '094 Registration, available on-line at

http://tsdr.uspto.gov/#caseNumber=1265094&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=documentSearch.

51.    The goods in the '094 Registration that issued from the '308 Application were and are listed as "three dimensional puzzles."

52.    Since the '062 Hungarian Patent was published over five years before the Examiner's request and disclosed a three-dimensional puzzle cube, said Patent covered the goods in the '094 Registration.

53.    Since the '875 Belgian Patent was published over 18 months before the Examiner's request and also disclosed a three-dimensional puzzle cube, said Patent also covered the goods in the '094 Registration.

54.    Because the '116 U.S. Patent was allowed some three months before the Examiner's request, was issued some three months before CBS responded to that request, and also disclosed a three-dimensional puzzle cube, in which squares covering the cube could be maneuvered and logically ordered, said Patent also covered the goods in the '094 Registration.

55.    Accordingly, CBS should have provided all Rubik's' Patents to the Examiner upon her January 17, 1983 request. CBS did not do so. Therefore, CBS made material omissions of fact in the '308 Application.

56.    Upon information and belief, CBS knew or should have known about all Rubik's'
Patents and their relevance to the '308 Application that resulted in the '094 Registration but
chose not to disclose those Patents to the Examiner.

57.    Upon information and belief, CBS withheld the Rubik's' Patents from the
Examiner in the '308 Application process because of their importance to the Examiner's ongoing
questions about functionality.

58.    Similarly, upon information and belief, CBS knew or should have known that the
puzzle cube design at the core of the '308 Application was utilitarian functional.

59.    Nevertheless, CBS declined to advise the Examiner of this salient and dispositive
fact. Thus, CBS made a further material omission of fact in the '308 Application in this respect.

60.    Upon information and belief, the Examiner allowed the '094 Registration to issue,
in part, owing to CBS's material omissions of fact.  Had the Examiner been aware of and studied
the Rubik's' Patents, she would have known that her concerns about functionality were sound
and legitimate, and she would have refused registration upon that basis.

61.    Moreover, at the time of submission of the '308 Application, CBS knew or should
have known that the puzzle cube design featured therein was utilitarian functional. Simply stated,
CBS should never have tendered the '308 Application, and the '094 Registration never should
have issued.

62.    As described below, notwithstanding the fraud perpetrated on the USPTO in
regard to the '308 Application, Rubik's now wields the '094 Registration to anticompetitive
effect by threatening to sue and suing puzzle cube sellers, such as Cubicle, in an effort to enforce
that plainly invalid Registration.

**G.    Rubik's Predecessor-in-Interest Fraudulently
       Procures the '794 Registration.**

63.    Upon information and belief, on or about May 2, 1996, Seven Towns Ltd.

("Seven Towns"), a United Kingdom corporation purporting to be the owner of the '794

Registration and, in fact, another of Rubik's' predecessors-in-interest, whose address was 7

Lambton Place, London W11 2SH (the same as Rubik's' present address), submitted an

application to the USPTO for the '794 Registration.

64.    As of submission of this application and while it was pending, Seven Towns knew

or should have known that the purported design mark featured therein was utilitarian functional.

Consequently, Seven Towns should never have tendered this application to the USPTO, and the

'794 Registration never should have issued. Furthermore, Seven Towns did not disclose this

utilitarian functionality to the USPTO.

65.    Upon information and belief, the failure of Seven Towns to make this disclosure

to the USPTO was deliberate and carried out with fraudulent intent.

66.    In these premises, the USPTO granted the application of Seven Towns and on or

about October 12, 1999 issued the '794 Registration. See full USPTO file history of the '794

Registration, available on-line at

http://tsdr.uspto.gov/#caseNumber=2285794&caseSearchType=US_APPLICATION&caseType

=DEFAULT&searchType=documentSearch.

67.    As a result, Seven Towns procured the '794 Registration by fraud.

H.   **Rubik's Predecessor-in-Interest Obtains**
      **Renewal of the '094 Registration by Fraud.**

68.   On or about October 2, 2003, Seven Towns, again as Rubik's predecessor-in-interest, submitted an application to the USPTO for renewal of the '094 Registration.

69.   As of submission of this application and while it was pending, Seven Towns knew or should have known that the purported design mark featured therein was utilitarian functional. Consequently, Seven Towns should never have tendered this application to the USPTO, and the '094 Registration never should have been renewed. Furthermore, Seven Towns did not disclose this utilitarian functionality to the USPTO.

70.   Upon information and belief, the failure of Seven Towns to make this disclosure to the USPTO was deliberate and carried out with fraudulent intent.

71.   In these premises, the USPTO granted the application of Seven Towns and on or about February 21, 2004 renewed the '094 Registration.

72.   As a result, Seven Towns obtained the 2004 renewal of the '094 Registration by fraud.

I.   **Rubik's Predecessor-in-Interest Obtains**
      **Renewal of the '794 Registration by Fraud.**

73.   On or about October 9, 2009, Seven Towns, again as Rubik's predecessor-in-interest, submitted an application to the USPTO for renewal of the '794 Registration.

74.   As of submission of this application and while it was pending, Seven Towns knew or should have known that the purported design mark featured therein was utilitarian functional. Consequently, Seven Towns should never have tendered this application to the USPTO, and the '794 Registration never should have been renewed. Furthermore, Seven Towns did not disclose this utilitarian functionality to the USPTO.

15

75.    Upon information and belief, the failure of Seven Towns to make this disclosure to the USPTO was deliberate and carried out with fraudulent intent.

76.    In these premises, the USPTO granted the application of Seven Towns and on or about October 13, 2009 renewed the '794 Registration.

77.    As a result, Seven Towns obtained renewal of the '794 Registration by fraud.

**J.    Rubik's Purported Trademarks Become Generic by January 1, 2010.**

78.    Between in or about 1980 and the date of the filing of this Amended Complaint, as Rubik's itself concedes, its three dimensional combination puzzle under the name "Rubik's Cube" was sold continuously. Upon information and belief, Rubik's achieved sales of over 40 million such puzzles in the United States during this period.

79.    In fact, as Rubik's has often proclaimed, Rubik's Purported Trademarks became extremely well known and famous during these years, so well known and famous that they became the generic name for, and synonymous with, a general class of such puzzles.

80.    In actuality, upon information and belief, by no later than January 1, 2010, the primary meaning of Rubik's Purported Trademarks had become puzzle products themselves rather than being an indication of the source of such products. Otherwise put, Rubik's Purported Trademarks, by no later than January 1, 2010, no longer exclusively identified Rubik's as the commercial origin of such puzzle products, and this fact was obvious and widely known as of that date.

81.    A recent search on Amazon.com for "puzzle cube" has revealed numerous puzzle cubes for sale consisting of a black cube with right-angled smaller internal cubes that can twist and turn with matching color patches, including:

| KickFire Kube Speed Cube | INIL 3x3x3order cube puzzle |
|---|---|



| ShengShou 3x3x3 Puzzle Cube | Speed Cube 3x3 |
|---|---|



The Amazon.com pages for these four examples of puzzle cubes are annexed as Exhibits E, F, G, and H, respectively.

82.    The introduction of numerous competing cube products into the market since 1980 has caused the puzzle cube design and the words and terms depicted in Rubik's' Purported Trademarks to (a) become the generic designation for puzzle cubes consisting of a black cube with right-angled smaller internal cubes that can twist and turn with matching color patches, and/or (b) otherwise lose their significance as marks.

83.     Additionally, owing to the flooding of competing cube products into the market since 1980, consumers did not recognize and no longer view Rubik's as the sole source of puzzle cubes; that is, Rubik's' puzzle cube design and the words or terms "Rubik's Cube" have come to refer to puzzle cubes themselves rather than to the source of puzzle cubes.

84.     As Rubik's' Purported Trademarks were becoming genericized before 2010, Rubik's, upon information and belief, took inadequate steps to police and enforce those purported marks and therefore effectively abandoned them. This fact, too, was obvious and widely known as of January 1, 2010.

### K.      Rubik's' Predecessor-in-Interest and its Counsel Obtain Renewal of the '974 Registration By Fraud.

85.     On or about April 17, 2013, Seven Towns, again as Rubik's' predecessor-in-interest, filed with the USPTO a "Combined Declaration of Use and/or Excusable Nonuse/Application for Renewal of Registration of a Mark under Sections 8 & 9" ("Combined Declaration") as to the '974 Registration.

86.     Seven Towns did so by and through, among others, its counsel, Mark I. Peroff, Esq. ("Attorney Peroff") and Darren W. Saunders, Esq. ("Attorney Saunders") of Manatt Phelps & Phillips LLP ("MPP"), Seven Times Square-22nd Floor, New York, New York 10036. In the Combined Declaration, Attorney Peroff represented himself to be both the "Domestic Representative" of and "Attorney of record" for Seven Towns.

87.     In connection with the Combined Declaration, Attorney Peroff also caused a "Declaration of Use and/or Excusable Nonuse in Commerce" ("Declaration") pursuant to "Section 8" and an "Application for Renewal" as to the '974 Registration pursuant to "Section 9" to be filed with the USPTO.

88.     Upon information and belief, as of the date of the filing of the Declaration, Seven Towns had never claimed excusable nonuse of the '974 Registration. Thus, in the Declaration, Attorney Peroff represented that the "Rubik's Cube … [word] mark is in use in commerce or in connection with the goods and services identified above. …"

89.     At the time Attorney Peroff made this representation in the Declaration, Seven Towns and Attorney Peroff knew or should have known that the purported word mark covered by the '974 Registration had years before become and was at that point generic and was then being used generically.

90.     Moreover, at that same time, Seven Towns and Attorney Peroff knew or should have known that Seven Towns and the prior record owners of the '974 Registration had since 1983 failed to adequately police and enforce Rubik's' Purported Word Mark and so had abandoned it.

91.     Thus, Seven Towns and Attorney Peroff should never have tendered this application to the USPTO, and the '974 Registration never should been renewed. Furthermore, neither Seven Towns nor Attorney Peroff disclosed to the USPTO the genericness and abandonment of Rubik's' Purported Word Mark.

92.     Upon information and belief, their failure to make this disclosure to the USPTO was deliberate and carried out with fraudulent intent.

93.     In these premises, the USPTO granted the application of Seven Towns and on or about May 9, 2013 renewed the '974 Registration.

94.     As a result, Seven Towns obtained renewal of the '974 Registration by fraud.

**L.    Rubik's Obtains A Further Renewal of the '094 Registration by Fraud.**

95.    On or about February 14, 2014, Rubik's submitted an application to the USPTO for a further renewal of the '094 Registration.

96.    As of submission of this application and while it was pending, Rubik's knew or should have known that the purported design mark featured therein was utilitarian functional, had become and was generic, and had been abandoned.

97.    Thus, Rubik's should never have tendered this application, and the '094 Registration never should have been renewed. Furthermore, Rubik's did not disclose the utilitarian functionality, genericness, and abandonment of this purported design mark to the USPTO.

98.    Upon information and belief, Rubik's' failure to make these disclosures was intentional and carried out with fraudulent intent.

99.    In these premises, the USPTO granted Rubik's' application and on or about March 4, 2014 renewed the '094 Registration.

100.    As a result, Rubik's obtained the further renewal of the '094 Registration in 2014 by fraud.

**M.    Rubik's Fraudulently Procures the '331 Registration.**

101.    On or about June 8, 2016, Rubik's submitted an application to the USPTO for the '331 Registration.

102.    The application for the '331 Registration sought protection in all of the following classifications of goods and services, among others:

- IC 003. US 001 004 006 050 051 052. G & S: "Animal grooming preparations in the nature of non-medicated grooming preparations for cats and dogs . . .";

- IC 005. US 006 018 044 046 051 052. G & S: "Dietary supplements and dietetic preparations . . .";

- IC 009. US 021 023 026 036 038. G & S: "Nautical apparatus and instruments . . .";

- IC 012. US 019 021 023 031 035 044. G & S: "Cars, motorcycles; motors and engine for cars and motorcycles . . .";

- IC 014. US 002 027 028 050. G & S: "Gemstones, pearls and precious metals . . .";

- IC 016. US 002 005 022 023 029 037 038 050. G & S: "Adhesive tapes for stationery or household purposes . . .";

- IC 018. US 001 002 003 022 041. G & S: "Backpacks; bags, envelopes, and pouches of leather for packaging . . .";

- IC 020. US 002 013 022 025 032 050. G & S: "Furniture, mirrors, picture frames, display boards, decorations of plastic for foodstuffs . . .";

- IC 021. US 002 013 023 029 030 033 040 050. G & S: "Combs, toilet brushes, water troughs, thermal insulated containers for food, cat litter pans . . .";

- IC 024. US 042 050. G & S: "Fabric for underwear, upholstery fabrics, bath linen except clothing, canvas for tapestry or embroidery . . .";

- IC 025. US 022 039. G & S: "Clothing, namely, bathing suits and swimwear . . .";

- IC 029. US 046. G & S: "Animal fat-based snack foods; Bean-based snack foods; Candied fruit snacks; Chicken nuggets . . .";

- IC 030. US 046. G & S: "Almond cake; Bakery goods and dessert items, namely, cakes, cookies, pastries, candies, and frozen confections for retail and wholesale distribution and consumption on or off the premises . . .";

- IC 032. US 045 046 048. G & S: "Beers, mineral and aerated waters, non-alcoholic drinks . . .";

- IC 034. US 002 008 009 017. G & S: "Tobacco, matches, match boxes, not of precious metal, cigar and cigarette cases, not of precious metal . . .";

- IC 035. US 100 101 102. G & S: "Advertising and marketing, administration of cultural and educational exchange programs . . .";

- IC 038. US 100 101 104. G & S: "Telecommunication services, namely, personal communication services, paging services, radio communication . . ."; and

- IC 042. US 100 101. G & S: "Scientific research, industrial research, namely, in the field of manufacture planning, computer programming for others . . . ."

103.    To obtain the '331 Registration, Rubik's falsely and affirmatively represented to the USPTO that it was using its proposed trademark in commerce to identify the source of all of the aforementioned goods and services. Upon information and belief, Rubik's has not been and is not involved in any way with most, if not all, of the aforementioned goods and has not engaged and does not engage in most, if not all, of the aforementioned services. Further, at the time Rubik's applied for the '331 Registration, Rubik's had no reasonable expectation that it would use its trademark to identify the source of most, if not all, of the goods and services listed in that application. Thus, Rubik's' application for the '331 Registration has perpetrated a fraud on the USPTO.

104.    In addition, as of submission of this application and while it was pending, Rubik's knew or should have known that the purported design mark featured therein was utilitarian functional, had become and was generic, and had been abandoned. Thus, Rubik's should never have tendered this application to the USPTO, and the '331 Registration never should have issued. Furthermore, Rubik's did not disclose to the USPTO the utilitarian functionality, genericness, and abandonment of this purported design mark.

105.    Upon information and belief, Rubik's' failure to make this disclosure to the USPTO was deliberate and carried out with fraudulent intent.

106.    In these premises, the USPTO granted Rubik's' application and on or about October 31, 2017 issued the '331 Registration. See full USPTO file history of the '331 Registration, available online at http://tsdr.uspto.gov/#caseNumber=5319331&caseSearchType=US_APPLICATION&caseType =DEFAULT&searchType=statusSearch.

107.    As a result, Rubik's procured the '331 Registration by fraud.

**N.    Rubik's Fraudulently Procures the '063 Registration.**

108.    On or about April 11, 2016, Rubik's submitted an application to the USPTO for the '063 Registration.

109.    The application for the '063 Registration sought protection in all of the following classifications of goods and services, among others:

- IC 003. US 001 004 006 050 051 052. G & S: "Animal grooming preparations in the nature of non-medicated grooming preparations for cats and dogs . . .";

- IC 005. US 006 018 044 046 051 052. G & S: "Dietary supplements and dietetic preparations . . .";

- IC 009. US 021 023 026 036 038. G & S: "Nautical apparatus and instruments . . .";

- IC 012. US 019 021 023 031 035 044. G & S: "Cars, motorcycles; motors and engine for cars and motorcycles . . .";

- IC 014. US 002 027 028 050. G & S: "Gemstones, pearls and precious metals . . .";

- IC 016. US 002 005 022 023 029 037 038 050. G & S: "Adhesive tapes for stationery or household purposes . . .";

- IC 018. US 001 002 003 022 041. G & S: "Backpacks; bags, envelopes, and pouches of leather for packaging . . .";

- IC 020. US 002 013 022 025 032 050. G & S: "Furniture, mirrors, picture frames, display boards, decorations of plastic for foodstuffs . . .";

- IC 021. US 002 013 023 029 030 033 040 050. G & S: "Combs, toilet brushes, water troughs, thermal insulated containers for food, cat litter pans . . .";

- IC 024. US 042 050. G & S: "Fabric for underwear, upholstery fabrics, bath linen except clothing, canvas for tapestry or embroidery . . .";

- IC 025. US 022 039. G & S: "Clothing, namely, bathing suits and swimwear . . .";

- IC 029. US 046. G & S: "Animal fat-based snack foods; Bean-based snack foods; Candied fruit snacks; Chicken nuggets . . .";

- IC 030. US 046. G & S: "Almond cake; Bakery goods and dessert items, namely, cakes, cookies, pastries, candies, and frozen confections for retail and wholesale distribution and consumption on or off the premises . . .";

- IC 032. US 045 046 048. G & S: "Beers, mineral and aerated waters, non-alcoholic drinks . . .";

- IC 034. US 002 008 009 017. G & S: "Tobacco, matches, match boxes, not of precious metal, cigar and cigarette cases, not of precious metal . . .";

- IC 035. US 100 101 102. G & S: "Advertising and marketing, administration of cultural and educational exchange programs . . .";

- IC 038. US 100 101 104. G & S: "Telecommunication services, namely, personal communication services, paging services, radio communication . . ."; and

- IC 042. US 100 101. G & S: "Scientific research, industrial research, namely, in the field of manufacture planning, computer programming for others . . . ."

110. To obtain the '063 Registration, Rubik's affirmatively and falsely represented to the USPTO that it was using its proposed trademark in commerce to identify the source of all of the aforementioned goods and services. Upon information and belief, Rubik's has not been and is not involved in any way with most, if not all, of the aforementioned goods and has not engaged and does not engage in most, if not all, of the aforementioned services. Further, at the time Rubik's applied for the '063 Registration, Rubik's had no reasonable expectation that it would use its trademark to identify the source of most, if not all, of the goods and services listed in that application. Thus, Rubik's' application for the '063 Registration has perpetrated a fraud on the USPTO.

111. In addition, as of submission of this application and while it was pending, Rubik's knew or should have known that the purported design mark featured therein was utilitarian functional, had become and was generic, and had been abandoned. Thus, Rubik's should never have tendered this application, and the '063 Registration never should have issued. Furthermore,

Rubik's did not disclose to the USPTO this utilitarian functionality, genericness, and abandonment of the purported design mark.

112.    Upon information and belief, Rubik's' failure to make this disclosure to the USPTO was deliberate and carried out with fraudulent intent.

113.    In these premises, the USPTO granted Rubik's' application and on or about January 9, 2018 issued the '063 Registration. See full USPTO file history of the '063 Registration, available online at http://tsdr.uspto.gov/#caseNumber=5372063&caseSearchType=US_APPLICATION&caseType =DEFAULT&searchType=statusSearch.

114.    As a result, Rubik's procured the '063 Registration by fraud.

**III.    Rubik's Has Recently Commenced Groundless Lawsuits in this Court.**

115.    Between 2015 and 2017, Rubik's attempted to enforce its Purported Trademarks by commencing several actions in this Court alleging infringements of the '094 Registration and '794 Registration, including but not limited to: (i) *Rubik's Brand Ltd. v. Merchsource, LLC, et al.*, Case No. 15-cv-09751 (VEC), and (ii) *Rubik's Brand Ltd. v. Flambeau, Inc., et al.*, Case No. 17-cv-06559 (PGG).

116.    Rubik's did so notwithstanding the fact, as Rubik's and its counsel well knew, that both '094 Registration and '794 Registration, as of the commencement of both cases, were invalid for a host of reasons, as described above.

117.    In the former action, Attorney Peroff and Attorney Saunders, while at MPP, served as counsel of record to Rubik's, and Attorney Saunders signed that Complaint. In the latter, both of these Attorneys also served as counsel to Rubik's, but this time at their new firm,

Wilson Keadjian Browndorf LLP ("WKB"). And, Attorney Peroff signed the Complaint in the latter suit.

### IV.    Rubik's Egregious and Anticompetitive Conduct

#### A.    Rubik's Has Tried to "Tie-Out" Competitive Products from the Market.

118.    In addition to commencing actions in this Court seeking to enforce plainly invalid Registrations that were fraudulently procured and/or renewed, Rubik's, upon information and belief, has in recent years attempted to use the its Purported Trademarks to "tie-out" the products of competitors (including Cubicle) from the market.

119.    Indeed, upon information and belief, Rubik's has attempted to achieve such "tie-outs" by permitting competitors to license Rubik's' products, but only if said competitors agree to forego substantially all business activities related to an extremely wide range of products over which Rubik's holds no trademark or patent rights whatsoever.

120.    Upon information and belief, Rubik's has also been in the practice of threatening to sue competitors, if they are not willing to accede to Rubik's' unlawful demands for supposedly infringing Rubik's' Purported Trademark, when Rubik's all along has known and knows that it had and has no such widespread trademark rights.

#### B.    Rubik's Has Attempted to Limit Competitive Cubing Events.

121.    Upon information and belief, Rubik's has also wrongly used its Purported Trademarks to threaten potential sponsors and organizers of competitive cubing events, including but not limited to Cubicle, by asserting that use or promotion of certain cube products and those of third parties in such events would run afoul of those Purported Trademarks. In so doing, Rubik's has attempted to limit and has, in fact, limited the growth of competitive cubing by attempting to block and/or blocking competitive cubing events that had received sponsorship

support from retailers and manufacturers of cube products other than those made under license from Rubik's.

**C.    Rubik's Has Engaged in an Illegal Licensing Program.**

122.    Upon information and belief, Rubik's has engaged in a licensing program pursuant to which it demands that any company and/or competitor, including but not limited to Cubicle, that manufactures, distributes, markets, and sells any cube product in the United States and worldwide enter into a license agreement pursuant to which Rubik's receives royalty payments or similar compensation.

123.    Upon information and belief, as of the expiration of certain of Rubik's' Patents, all such license agreements became illegal and unenforceable, because the purported trademarks covered thereby have at all times been invalid and unenforceable.

124.    At all relevant times, Rubik's knew or should have known that it was improperly and wrongfully extracting royalty payments and other compensation under such license agreements, since the purported trademarks licensed thereunder were at all times invalid and unenforceable.

125.    Owing to all of Rubik's' anticompetitive activities alleged above and below, the markets for cube products and competitive cubing events in the United States and worldwide have been unreasonably restrained and/or monopolized.

**D.    Rubik's Turns Its Attention to Targeting Cubicle.**

126.    In addition to commencing the above-referenced actions against other of its competitors, Rubik's, on or about October 11, 2017, filed a Complaint in this Court alleging that Cubicle had infringed the '094 Registration and '794 Registration by manufacturing and selling custom-built and "do it yourself" twist puzzle cubes to consumers in the United States ("Rubik's'

First Complaint"). This Complaint sought, <u>inter alia</u>, injunctive relief and treble damages for

Cubicle's alleged trademark infringements, false designations of origin, and dilution of those two

Registrations, in supposed violation of the Lanham Act, New York General Business Law, and

New York State common law. In sum, this litigation threatened -- and Rubik's intended it to

threaten -- the well-being and very existence of Cubicle and its business.

127.    The aforementioned Attorneys Peroff and Saunders were listed as counsel to

plaintiff on Rubik's' First Complaint through the WKB firm, and Attorney Peroff signed that

Complaint.

128.    However, Rubik's did not formally serve the requisite process upon Cubicle in

2017 and proceeded by and through counsel (specifically Attorney Peroff) and a corporate

representative (one Viktor Bohm) to engage Cubicle in "settlement" discussions.

129.    In truth, these discussions were little more than a ruse designed to allow Rubik's

to intimidate, dominate, and unfairly and unlawfully restrain Cubicle and its business. For

instance, during these discussions, Rubik's sought to "tie out" Cubicle products from the market

by permitting Cubicle to license Rubik's' products, but only if Cubicle would agree to forego

substantially all business activities related to an extremely wide range of products over which

Rubik's held and holds no trademark or patent rights whatsoever. In addition, Rubik's threatened

to fully prosecute its First Complaint against Cubicle, unless Cubicle agreed that it would forego

sales of any cubing products in the mass distribution market, through major box retailers, even

though Rubik's well knew that it had no trademark or other intellectual property rights covering

most, if not all, of the products that Cubicle would be selling in the mass distribution market.

Additionally, Rubik's threatened to fully prosecute its First Complaint, if Cubicle would not

accede to, and would agree never to challenge, Rubik's' Purported Trademarks, when and as

Rubik's was well aware that it had and has no such widespread trademark rights.

130.    To be sure, during these "settlement" discussions, Rubik's knew or should have

known that its Purported Trademarks were invalid and unenforceable for the many reasons

outlined above.

131.    Cubicle declined to bend to Rubik's' unreasonable, anticompetitive, and unlawful

tactics and demands. Instead, Cubicle informed Rubik's -- as if Rubik's did not already know --

that its two Purported Design Marks Rubik's was seeking to enforce through its First Complaint

were invalid and procured by fraud. In addition, Cubicle advised Rubik's that by trying to

enforce such invalid marks, Rubik's was, inter alia, continuing its campaign of attempting to

threaten, harass, and intimidate Cubicle and unlawfully restraining competition in violation of

federal antitrust laws. And, Cubicle made quite clear that it would so contend in counterclaims

and affirmative defenses, were Rubik's' First Complaint to move forward in active litigation.

132.    During these talks, Phillip Yu, Cubicle's 50% owner and its Chief Executive

Officer, was the primary corporate representative and spokesperson for Cubicle, along with

undersigned counsel.

133.    By mid-January 2018, the "settlement" interactions between Rubik's and Cubicle

had broken down. As a result, lead counsel to Cubicle agreed with Attorney Peroff to himself

accept service of the Complaint on behalf of Cubicle to assist Rubik's in satisfying its

obligations to fully and properly serve process.

134.    After counsel to Cubicle accepted such service, Cubicle began to prepare its

response to Rubik's' First Complaint.

135.    On or about January 25, 2018, without prior notice of any kind to Cubicle, Rubik's voluntarily withdrew and dismissed its First Complaint. No further activity has taken place in that action as of the date of the filing of this Amended Complaint.

136.    Notwithstanding the dismissal of Rubik's' First Complaint, Cubicle believed that Rubik's and its oppressive and unlawful commercial tactics and strategies (including the possible attempted enforcement of Rubik's' recently acquired '331 Registration and '063 Registration) remained a real and imminent threat to Cubicle's well-being and very existence.

137.    Accordingly, on or about February 2, 2018, Cubicle commenced this action by filing its original Complaint against Rubik's, (i) requesting declaratory relief as to its noninfringement of Rubik's' Purported Design Marks, (ii) alleging that those Purported Design Marks were all invalid as utilitarian functional and/or generic, (iii) averring that three of those Purported Design Marks were procured by fraud and should be cancelled, and (iv) seeking compensatory and treble damages owing to Rubik's' longstanding campaign of harassment, threats, and intimidation through, inter alia, the alleged enforcement of plainly invalid marks in violation of federal antitrust statutes.

138.    Some three weeks later, on or about February 26, 2018, Rubik's filed a Complaint in this Court against Cubicle and Philip Yu individually that was initially assigned to Honorable Laura Taylor Swain ("Rubik's' Second Complaint").

139.    Attorney Peroff, Attorney Saunders, and WKB were listed as counsel to plaintiff in Rubik's' Second Complaint, and Attorney Saunders signed that pleading. In this action, Rubik's alleged that both defendants had infringed the '974 Registration (Rubik's' Purported Word Mark) through instructional videos published on Cubicle's website and on YouTube and a

pamphlet published on that website as to how to solve Rubik's Cube puzzles, in contravention of the Lanham Act and New York General Business Law.

140.    Upon information and belief, Rubik's commenced this action solely and simply to punish Cubicle, and especially Mr. Yu personally, for a standing up to Rubik's during "settlement" talks and refusing to accede to Rubik's' unsavory and extortionate demands.

141.    On or about April 2, 2018, Cubicle and Mr. Yu filed a letter motion before Judge Swain for a ruling that Rubik's' Second Complaint was "related" to the instant case. Rubik's vigorously opposed the motion. After full briefing by all parties, the Court granted the motion on or about April 10, 2018.

142.    At a Pretrial Conference in open court on April 26, 2018, this Court ruled that Cubicle's Complaint herein and Rubik's' Second Complaint should proceed initially as if consolidated and directed Cubicle to file its expressly envisioned Amended Complaint on or before May 11, 2018. This pleading ensued.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

**(Declaratory Judgment as to Cubicle's Non-Infringement of Rubik's'
Purported Trademarks -- the '974 Registration, '094 Registration,
'794 Registration, '331 Registration, and '063 Registration)**

143.    Cubicle realleges and restates Paragraphs 1 through 142 above, as if fully set forth herein.

144.    On or about October 11, 2017, Rubik's filed its First Complaint against Cubicle in this Court, alleging in part registered trademark infringement under 15 U.S.C. § 1114.

145.    On or about January 25, 2018, Rubik's voluntarily withdrew its First Complaint, without prejudice. After Cubicle commenced this action, Rubik's, on or about February 26, 2018, filed its Second Complaint.

146.    Upon motion by Cubicle, the Court, on or about April 10, 2018, ruled that the instant case and Rubik's' Second Complaint were "related."

147.    On or about April 26, 2018, this Court ordered that the instant case and Rubik's' Second Complaint were to be treated initially as consolidated and directed Cubicle to file its envisioned Amended Complaint on or before May 11, 2018.

148.    By reason of Rubik's' efforts to (i) prevent the advertising, manufacturing, production, distribution, and any other use of Cubicle's twist puzzle cube products by previously filing its First Complaint against Cubicle and later dismissing that Complaint, (ii) bar Cubicle from publishing instructional videos and a pamphlet related to solving a "Rubik's Cube" puzzle, and (iii) improperly and unlawfully restrain Cubicle's business through those two lawsuits and the aforementioned "settlement" interactions in late 2017 and early 2018, there now exists between the parties an actual and justiciable controversy concerning whether or not Cubicle has infringed any alleged rights of Rubik's requiring declaratory relief.

149.    A declaration is necessary and appropriate at this time to affirm Cubicle's rights to (i) advertise, manufacture, produce, distribute, or otherwise use its twist puzzle cube products, (ii) publish instructional videos and a pamphlet as to solving "Rubik's Cube" puzzles, and (iii) carry on its current business operations without further impediment or interruption from Rubik's.

150.    Each and all of Rubik's' Purported Trademarks are invalid for various reasons, as alleged above.

151.    There is no likelihood of confusion between Cubicle's twist puzzle cube products and Rubik's' puzzle cube design, because, inter alia, the parties' respective puzzle cubes are not similar in appearance. Additionally and critically, both Cubicle and Rubik's prominently display their brand names in promoting and selling their respective goods. Nor will or does any likelihood of confusion arise from Cubicle's aforementioned instructional videos and pamphlet.

152.    For the reasons stated above, Cubicle's advertising, manufacturing, production, distribution, and all other uses of its twist puzzle cube products and its aforementioned instructional videos and pamphlet do not violate any of Rubik's' supposed rights under federal law as to Rubik's' Purported Trademarks.

153.    Accordingly, Cubicle is entitled to a Declaratory Judgment that it has not infringed, is not infringing, and is not liable for infringing any of Rubik's' alleged rights, if any, as to Rubik's' Purported Trademarks.

## SECOND CAUSE OF ACTION

**(Cancellation of Rubik's' Purported Design Marks -- the '094 Registration,
'794 Registration, '331 Registration, and '063 Registration --
for Utilitarian Functionality)**

154.    Cubicle realleges and restates Paragraphs 1 through 142 above, as if fully set forth herein.

155.    Because features of Rubik's' Purported Design Marks, including but not limited to their colors, are essential to the use and purpose of Rubik's' puzzle cube, those Purported Design Marks are utilitarian functional.

156.    In addition, the fact that the Rubik's' Patents covered and covers the features of Rubik's' Purported Design Marks also has demonstrated and demonstrates that those Purported Design Marks are utilitarian functional.

157.    Accordingly, the Registrations for Rubik's' Purported Design Marks -- the '094 Registration, '794 Registration, '331 Registration, and '063 Registration -- are neither valid nor protectable because of their utilitarian functionality and so should be cancelled for that reason immediately.

### THIRD CAUSE OF ACTION

**(Cancellation of Rubik's' Purported Trademarks -- the '974 Registration, '094 Registration, '794 Registration, '331 Registration, and '063 Registration -- for Genericness)**

158.    Cubicle realleges and restates Paragraphs 1 through 142 above, as if fully set forth herein.

159.    As described above and upon information and belief, Rubik's allowed dozens of puzzle cubes manufactured and marketed by third parties to saturate the puzzle cube market in the approximate period from 1983 to and through 2009.

160.    Consequently , by no later than January 1, 2010, consumers did not -- and as of today do not -- recognize Rubik's as the sole source of puzzle cubes known as "Rubik's Cubes." In fact, Rubik's' puzzle cube design and the term "Rubik's Cube" have come to refer to puzzle cubes generally rather than the source of puzzle cubes.

161.    In short, Rubik's' puzzle cube design and the term "Rubik's Cube" have lost their distinctive significance as identifications of source.

162.    Because Rubik's' puzzle cube design and the term "Rubik's Cube" are no longer source identifying and have not been so for at least eight years, they are generic and not entitled to trademark protection.

163.    Accordingly, the Registrations for all of Rubik's' Purported Trademarks -- the '974 Registration, '094 Registration, '794 Registration, '331 Registration, and '063 Registration

-- are neither valid nor protectable owing to their genericness and so should be cancelled for that reason immediately.

### FOURTH CAUSE OF ACTION

**(Cancellation of the '974 Registration, '094 Registration, and '794 Registration for Abandonment)**

164.    Cubicle realleges and restates Paragraphs 1 through 142 above, as if fully set forth herein.

165.    Upon information and belief, as described above, in the approximate period from in or about 1983 to in or about 2010, Rubik's insufficiently policed and enforced the '974 Registration, '094 Registration, and '794 Registration.

166.    As a result, upon information and belief, as of January 1, 2010, Rubik's had abandoned each and all of those three Registrations.

167.    Accordingly, the '974 Registration, '094 Registration, and '794 Registration are neither valid nor protectable, as they have been abandoned, and so should be cancelled for that reason immediately.

### FIFTH CAUSE OF ACTION

**(Cancellation of the '094 Registration for False and Fraudulent Procurement Thereof)**

168.    Cubicle realleges and restates Paragraphs 1 through 142 above, as if fully set forth herein.

169.    As described above, CBS, Rubik's' predecessor-in-interest as to the '094 Registration, failed to disclose Rubik's' Patents to the USPTO, despite CBS's knowledge of those Patents upon or shortly after their publication and/or issuance.

170.    CBS intended to induce the Examiner to rely upon CBS's failure to disclose both the Rubik's' Patents and the utilitarian functionality of the subject purported design mark covered thereby, so that the Examiner would not reject the '308 Application for the '094 Registration on the basis of functionality.

171.    Indeed, CBS knew or should have known as of submission of the '308 Application that the purported design mark featured therein was (and had always been) utilitarian functional.

172.    Upon information and belief, the Examiner reasonably relied upon CBS's failure to disclose the Rubik's' Patents and the utilitarian functionality of the subject purported mark covered thereby and allowed the '094 Registration to issue partly because of those material omissions of fact. Had the Examiner seen and studied Rubik's' Patents and been fully aware of the utilitarian functionality of the subject purported design mark, she would have known that her concerns about functionality were sound and legitimate and refused registration.

173.    CBS's failure to disclose the Rubik's' Patents and the utilitarian functionality of the subject purported mark to the USPTO was carried out deliberately with fraudulent intent.

174.    Despite the fraud CBS perpetrated upon the USPTO in this regard, Rubik's now wields the '094 Registration to anticompetitive effect by threatening to sue and suing puzzle cube sellers, such as Cubicle.

175.    Consequently, Rubik's' ownership and enforcement of the '094 Registration has damaged and will continue to damage puzzle cube sellers, including Cubicle.

176.    Accordingly, owing to the fraud perpetrated by CBS upon the USPTO as to the '308 Application, Rubik's' '094 Registration is neither valid nor protectable and so should be cancelled for that reason immediately.

## SIXTH CAUSE OF ACTION

### (Cancellation of the '794 Registration
### for False and Fraudulent Procurement Thereof)

177.    Cubicle realleges and restates Paragraphs 1 through 142 above, as if fully set forth herein.

178.    As described above, on or about May 2, 1996, Seven Towns, as Rubik's' predecessor-in-interest, submitted an application to the USPTO for the registration of a purported design mark related to the "Rubik's Cube."

179.    As of submission of this application and while it was pending, Seven Towns knew or should have known that the purported design mark featured therein was utilitarian functional for the reasons set forth above.

180.    Notwithstanding this knowledge, Seven Towns failed to disclose to the USPTO the utilitarian functionality of the purported design mark.

181.    Upon information and belief, the failure of Seven Towns to disclose this fact to the USPTO was deliberate and carried out with fraudulent intent.

182.    Nevertheless, on or about October 12, 1999, the USPTO issued the '794 Registration. Had Seven Towns advised the USPTO that the purported design mark featured in the application for said Registration was utilitarian functional, the USPTO would never have issued this Registration.

183.    Despite the fraud perpetrated by Seven Towns upon the USPTO in this regard, Rubik's now wields the '794 Registration to anticompetitive effect by threatening to sue and suing puzzle cube sellers, including Cubicle, to enforce this invalid Registration.

184.    Consequently, Rubik's' ownership and enforcement of the '794 Registration has damaged and will continue to damage puzzle cube sellers, including Cubicle.

185.    Accordingly, owing to the fraud perpetrated by Seven Towns upon the USPTO in connection with the application for the '794 Registration, the '794 Registration is neither valid nor protectable and so should be cancelled for that reason immediately.

## SEVENTH CAUSE OF ACTION

### (Cancellation of the '094 Registration
### for False and Fraudulent Renewal Thereof)

186.    Cubicle realleges and restates Paragraphs 1 through 142 above, as if fully set forth herein.

187.    As described above, on or about October 12, 2003, Seven Towns, as Rubik's' predecessor-in-interest, submitted an application to the USPTO for renewal of the '094 Registration.

188.    At of submission of this application and while it was pending, Seven Towns knew or should have known that the purported design mark featured therein was utilitarian functional for the reasons set forth above.

189.    Notwithstanding this knowledge, Seven Towns failed to disclose to the USPTO the utilitarian functionality of this purported design mark.

190.    Upon information and belief, the failure of Seven Towns to disclose this fact to the USPTO was deliberate and carried out with fraudulent intent.

191.    Nevertheless, on or about February 14, 2004, the USPTO renewed the '094 Registration. Had Seven Towns advised the USPTO that the purported design mark featured in the application for renewal of said Registration was utilitarian functional, the USPTO would never have renewed that Registration.

192.    Despite the fraud perpetrated by Seven Towns upon the USPTO in this regard, Rubik's now wields the '094 Registration to anticompetitive effect by threatening to sue and suing puzzle cube sellers, such as Cubicle, to enforce this invalid Registration.

193.    Consequently, Rubik's' ownership and enforcement of the '094 Registration has damaged and will continue to damage puzzle cube sellers, including Cubicle.

194.    Accordingly, owing to the fraud perpetrated by Seven Towns' upon the USPTO in connection with the application for renewal of the '094 Registration, the '094 Registration is neither valid nor protectable and so should be cancelled for that reason immediately.

<u>**EIGHTH CAUSE OF ACTION**</u>

**(Cancellation of the '794 Registration
for False and Fraudulent Renewal Thereof)**

195.    Cubicle realleges and restates Paragraphs 1 through 142 above, as if fully set forth herein.

196.    As described above, on or about October 9, 2009,  Seven Towns, as Rubik's' predecessor-in-interest, submitted an application to the USPTO for renewal of the '794 Registration.

197.    As of submission of this application and while it was pending, Seven Towns knew or should have known that the purported design mark featured therein was utilitarian functional for the reasons set forth above.

198.    Notwithstanding this knowledge, Seven Towns failed to disclose to the USPTO the utilitarian functionality of this purported design mark.

199.    Upon information and belief, the failure of Seven Towns to disclose this fact to the USPTO was deliberate and carried out with fraudulent intent.

200.     Nevertheless, on or about October 13, 2009, the USPTO renewed the '794 Registration. Had Seven Towns advised the USPTO that the purported design mark featured in the application for renewal of said Registration was utilitarian functional, the USPTO would never have renewed that Registration.

201.     Despite the fraud perpetrated by Seven Towns upon the USPTO in this regard, Rubik's now wields the '794 Registration to anticompetitive effect by threatening to sue and suing puzzle cube sellers, including Cubicle, to enforce this invalid Registration.

202.     Consequently, Rubik's' ownership and enforcement of the '794 Registration has damaged and will continue to damage puzzle cube sellers, including Cubicle.

203.     Accordingly, owing to the fraud perpetrated by Seven Towns upon the USPTO in connection with the application for renewal of the '794 Registration, the '794 Registration is neither valid nor protectable and so should be cancelled for that reason immediately.

## NINTH CAUSE OF ACTION

### (Cancellation of the '974 Registration
### for False and Fraudulent Renewal Thereof)

204.     Cubicle realleges and restates Paragraphs 1 through 142 above, as if fully set forth herein.

205.     As described above, on or about April 17, 2013, Seven Towns, as Rubik's' predecessor-in-interest, submitted an application to the USPTO for renewal of the '974 Registration.

206.     As of submission of this application and while it was pending, Seven Towns and its counsel knew or should have known that the purported word mark featured therein had become and was generic and had been abandoned for the reasons outlined above.

207.    Notwithstanding this knowledge, Seven Towns and its counsel failed to disclose to the USPTO the genericness and abandonment of this purported word mark.

208.    Upon information and belief, the failure of Seven Towns and its counsel to disclose these facts to the USPTO was deliberate and carried out with fraudulent intent.

209.    On or about May 9, 2013, the USPTO renewed the '974 Registration. Had Seven Towns and/or its counsel advised the USPTO that the purported word mark featured in the application for renewal of that Registration had become and was generic and had been abandoned, the USPTO would never have renewed that Registration.

210.    Despite the fraud perpetrated by Seven Towns and its counsel upon the USPTO in this regard, Rubik's now wields the '974 Registration to anticompetitive effect by threatening to sue and suing puzzle cube sellers, including Cubicle, to enforce this invalid Registration.

211.    Consequently, Rubik's' ownership and enforcement of the '974 Registration has damaged and will continue to damage puzzle cube sellers, including Cubicle.

212.    Accordingly, owing to the fraud perpetrated by Seven Towns and its counsel upon the USPTO in connection with the application for renewal of the '974 Registration, the '974 Registration is neither valid nor protectable and so should be cancelled for that reason immediately.

## TENTH CAUSE OF ACTION

### (Cancellation of the '094 Registration
for False and Fraudulent Renewal Thereof)

213.    Cubicle realleges and restates Paragraphs 1 through 142 above, as if fully set forth herein.

214.    As described above, on or about February 14, 2014, Rubik's submitted an application to the USPTO for the further renewal of the '094 Registration.

215.    At the time it submitted this application and while it was pending, Rubik's knew or should have known that the purported design mark featured therein was utilitarian functional, had become and was generic, and had been abandoned for the reasons set forth above.

216.    Notwithstanding this knowledge, Rubik's failed to disclose to the USPTO the utilitarian functionality, genericness, and abandonment of this purported design mark.

217.    Upon information and belief, Rubik's failure to disclose these facts to the USPTO was deliberate and carried out with fraudulent intent.

218.    Nevertheless, on or about March 4, 2014, the USPTO renewed the '094 Registration. Had Rubik's advised the USPTO that the purported design mark featured in the 2014 application for the further renewal of said Registration was utilitarian functional, had become and was generic, and had been abandoned, the USPTO would never have further renewed that Registration.

219.    Despite the fraud perpetrated by Rubik's upon the USPTO in this regard, Rubik's now wields the '094 Registration to anticompetitive effect by threatening to sue and suing puzzle cube sellers, including Cubicle, to enforce this invalid Registration.

220.    Consequently, Rubik's' ownership and enforcement of the '094 Registration has damaged and will continue to damage puzzle cube sellers, including Cubicle.

221.    Accordingly, owing to the fraud perpetrated by Rubik's upon the USPTO in connection with the 2014 application for further renewal of the '094 Registration, the '094 Registration is neither valid nor protectable and so should be cancelled for that reason immediately.

## ELEVENTH CAUSE OF ACTION

### (Cancellation of the '331 Registration for False and Fraudulent Procurement Thereof)

222.    Cubicle realleges and restates Paragraphs 1 through 108 above, as if fully set forth herein.

223.    On or about June 8, 2016, Rubik's submitted to the USPTO an application for the '331 Registration. This application sought protection for the many and varied goods and services listed therein, as detailed in Paragraph 102 above.

224.    To obtain the '331 Registration, Rubik's knowingly and falsely represented to the USPTO that it had been using its purported trademark in commerce to identify the source of all of the many and varied goods and services listed in the application, as detailed in Paragraph 102 above.

225.    Upon information and belief, at all relevant times, Rubik's was not, has not been, and is not involved with most, if not all, of those listed goods and was not, has not been, and is not engaged in most, if not all, of  those listed services.

226.    Upon information and belief, Rubik's sought protection for all of these many and varied goods and services with fraudulent intent, because it had no reasonable expectation that it would become involved with most, if not all, of those listed goods and engaged in most, if not all, of the listed services.

227.    Upon information and belief, Rubik's intended to induce the USPTO to act in reliance on its affirmative misrepresentations, so that the USPTO would issue a Registration covering the goods and services listed therein.

228.    On or about October 31, 2017, the USPTO issued the '331 Registration.

229.    Upon information and belief, the USPTO, in issuing the '331 Registration, reasonably relied upon Rubik's' misrepresentations in its application for that Registration, notwithstanding the fact that Rubik's had no reasonable expectation that it would become involved with most, if not all, of those listed goods or engaged in most, if not all, of those listed services.

230.    Cubicle has suffered damages resulting from the USPTO's reliance upon Rubik's' fraudulent misrepresentations in the application for that Registration, because Rubik's has utilized the '331 Registration and its other Purported Trademarks in attempting to unlawfully preclude Cubicle's products from entering, and otherwise unlawfully restrain Cubicle's activities in, the cube puzzle market.

231.    In sum, Rubik's procured the '331 Registration by fraud. Accordingly, that Registration is neither valid nor protectable and so should be cancelled for that reason immediately.

## TWELFTH CAUSE OF ACTION

### (Cancellation of the '063 Registration
### for False and Fraudulent Procurement Thereof)

232.    Cubicle realleges and restates Paragraphs 1 through 142 above, as if fully set forth herein.

233.    On or about April 11, 2016, Rubik's submitted an application to the USPTO for the '063 Registration. That application sought protection for the many and varied goods and services listed therein, as detailed in Paragraph 109 above.

234.    To obtain the '063 Registration, Rubik's knowingly and falsely represented to the USPTO that it had been using its purported design mark in commerce to identify the source of all of the many and varied goods and services listed in the application, as detailed in Paragraph 109 above.

235.    Upon information and belief, Rubik's was not, has not been, and is not involved with most, if not all, of those listed goods and has not been and is not engaged in most, if not all, of those listed services.

236.    Upon information and belief, Rubik's sought protection for all of these many and varied goods and services with fraudulent intent, because it had no reasonable expectation that it would become involved with most, if not all, of the listed goods or become engaged with most, if not all, of the listed services.

237.    Upon information and belief, Rubik's intended to induce the USPTO to act in reliance on its affirmative misrepresentations, so that the USPTO would issue a Registration covering the goods and services listed therein.

238.    On or about January 9, 2018, the USPTO issued the '063 Registration.

46

239.    Upon information and belief, the USPTO, in issuing the '063 Registration, reasonably relied upon Rubik's' misrepresentations in its application for that Registration, notwithstanding the fact that Rubik's had no reasonable expectation that it would become involved with most, if not all, of those listed goods or engaged in most, if not all, of those listed services.

240.    Cubicle has suffered damages resulting from the USPTO's reliance upon Rubik's' fraudulent misrepresentations in the application for that Registration, because Rubik's has utilized the '063 Registration and its other Purported Trademarks in attempting to unlawfully preclude Cubicle's products from entering, and otherwise unlawfully restrain Cubicle's activities in, the cube puzzle market.

241.    In sum, Rubik's procured the '063 Registration by fraud. Accordingly, that Registration is neither valid nor protectable and so should be cancelled for that reason immediately.

### THIRTEENTH CAUSE OF ACTION

**(Damages for Violations of the Sherman Antitrust Act, 15 U.S.C. § 2,
and Clayton Antitrust Act, 15 U.S.C. § 15)**

242.    Cubicle realleges and restates Paragraphs 1 through 142 above, as if fully set forth herein.

243.    As alleged above, after Ideal procured the '974 Registration in or about 1983, Seven Towns obtained renewal of that Registration by fraud in or about 2013.

244.    As also alleged above, CBS fraudulently procured the '094 Registration in or about 1984.

245.    As further alleged above, Seven Towns (in or about 2004) and Rubik's (in or about 2014) have each obtained a renewal of the '094 Registration by fraud.

246.    As also alleged above, Seven Towns fraudulently procured the '794 Registration.

247.    As further alleged above, Seven Towns obtained renewal of the '794 Registration by fraud in or about 2009.

248.    Upon information and belief, at all relevant times Rubik's had and has knowledge of (i) Seven Towns's fraudulent renewal of the '974 Registration, (ii) CBS's fraudulent procurement and Seven Towns's and Rubik's fraudulent renewals of the '094 Registration, and (iii) Seven Towns's fraudulent procurement and renewal of '794 Registration.

249.    As illustrated above, Rubik's has attempted to enforce the fraudulently renewed '974 Registration, the fraudulently procured and fraudulently renewed '094 Registration, and the fraudulently procured and fraudulently renewed '794 Registration by commencing trademark infringement actions in this Court against Cubicle and other parties.

250.    By unlawfully attempting to stifle competition through unfounded trademark infringement actions relying upon the invalid '974 Registration, invalid '094 Registration, and invalid '794 Registration, Rubik's has committed fraud under the *Walker Process* doctrine in contravention of the Sherman Antitrust Act, 15 U.S.C. § 2.

251.    Rubik's has also run afoul of the Clayton Antitrust Act, 15 U.S.C. § 15, by threatening to use its Purported Trademarks to "tie-out" the products of competitors, particularly Cubicle, from the market.

252.    Rubik's has done so by essentially telling those competitors that they can license Rubik's products only if they agree to forego substantially all of their business activities related to an extremely wide range of products over which Rubik's holds no trademark or other rights, and then by threatening to sue them, should they not be willing to accede to Rubik's unlawful

demands, for supposedly violating Rubik's' Purported Trademarks. In actuality, and as Rubik's well knew and knows, Rubik's had and has no such widespread trademark rights.

253.    Rubik's has further violated the aforementioned Clayton Act by (i) wrongfully using its invalid and unenforceable Purported Trademarks to threaten Cubicle and other potential sponsors of competitive cubing events by asserting that promotion of certain products of third parties at such events would violate Rubik's' Purported Trademarks.

254.    In so doing, Rubik's has limited the growth of competitive cubing by blocking and/or attempting to block competitive cubing events permitting use of cube products other than those made by or under license from Rubik's, and (ii) operating a licensing program under which Rubik's demands that any company, including but not limited to Cubicle, that manufactures, distributes, markets, and sells any cube product in the United States and worldwide enter into a license agreement pursuant to which Rubik's would receive and receives royalty payments or similar compensation. Upon expiration of the Rubik's' Patents, all such license agreements became illegal and unenforceable, as the Purported Trademarks covered by such license agreements have been at all relevant times invalid and unenforceable, and because even Rubik's has repeatedly admitted that its Purported Trademarks did not and do not cover every possible cube puzzle product.

255.    Upon information and belief, Rubik's knew or should have known that it was improperly and wrongfully extracting royalty payments and other compensation under such license agreements, since the Purported Trademarks licensed thereunder were at all times invalid and unenforceable, and because Rubik's insisted that licensees pay royalties on products not covered by valid and enforceable intellectual property rights actually owned by Rubik's.

256.    As a result of Rubik's' anticompetitive activities alleged herein, the markets for cube products and competitive cubing events in the United States and worldwide have been unreasonably restrained and/or monopolized.

257.    Cubicle has been injured in its business by reason of Rubik's' antitrust violations, as alleged herein.  These injuries consist of, inter alia, the effects of price gouging and the stifling of Cubicle's ability to sell its products.

258.    Cubicle seeks damages and multiple damages to the fullest extent permitted by law for its injuries caused by Rubik's' various contraventions of federal antitrust laws.

## PRAYER FOR RELIEF

259.    **WHEREFORE**, plaintiff Cubicle seeks and prays for a Judgment of this Court against defendant Rubik's, awarding Cubicle various relief, as follows:

•       As to the First Cause of Action, a declaration that Cubicle has not infringed any valid and enforceable federal rights owned by Rubik's related in any way to Rubik's' Purported Trademarks;

•       As to the Second Cause of Action, a declaration that Rubik's' Purported Design Marks -- the '094 Registration, '794 Registration, '331 Registration, and '063 Registration -- are neither valid nor protectable because of their utilitarian functionality and a direction to the USPTO to cancel each and all of those Registrations immediately for that reason;

•       As to the Third Cause of Action, a declaration that Rubik's' Purported Trademarks -- the '974 Registration, '094 Registration, '794 Registration, '331 Registration, and '063 Registration -- are neither valid nor protectable owing to their genericness and a direction to the USPTO to cancel each and all of those Registrations immediately for that reason;

- As to the Fourth Cause of Action, a declaration that the '974 Registration, '094 Registration, and '794 Registration are neither valid nor protectable, since those Registrations have been abandoned, and a direction to the USPTO to cancel each and all of those Registrations immediately for that reason;

- As to the Fifth Cause of Action, a declaration that the '094 Registration is neither valid nor protectable, as that Registration was procured by fraud, and a direction to the USPTO to cancel that Registration immediately for that reason;

- As to the Sixth Cause of Action, a declaration that the '794 Registration is neither valid nor protectable, because that Registration was procured by fraud, and a direction to the USPTO to cancel that Registration immediately for that reason;

- As to the Seventh Cause of Action, a declaration that the '094 Registration is neither valid nor protectable, since the 2004 renewal of said Registration was obtained by fraud, and a direction to the USPTO to cancel that Registration immediately for that reason;

- As to the Eighth Cause of Action, a declaration that the '794 Registration is neither valid nor protectable, as the renewal of said Registration was obtained by fraud, and a direction to the USPTO to cancel that Registration immediately for that reason;

- As to the Ninth Cause of Action, a declaration that the '974 Registration is neither valid nor protectable, because the renewal of said Registration was obtained by fraud, and a direction to the USPTO to cancel that Registration immediately for that reason;

- As to the Tenth Cause of Action, a declaration that the '094 Registration is neither valid nor protectable, because the 2014 further renewal of said Registration was obtained by fraud, and a direction to the USPTO to cancel that Registration immediately for that reason;

• As to the Eleventh Cause of Action, a declaration that the '331 Registration is neither valid nor protectable, as that Registration was procured by fraud, and a direction to the USPTO to cancel that Registration immediately for that reason;

• As to the Twelfth Cause of Action, a declaration that the '063 Registration is neither valid nor protectable, since that Registration was procured by fraud, and a direction to the USPTO to cancel that Registration immediately for that reason;

• As to the Thirteenth Cause of Action, damages adequate to compensate Cubicle for Rubik's' attempted enforcements of its fraudulently procured and fraudulently renewed Purported Trademarks and treble damages for Rubik's' many and repeated violations of the Sherman and Clayton Antitrust Acts; and

• As to all Causes of Action, reasonable costs and expenses, including attorneys' fees pursuant to 15 U.S.C. § 1117 or other applicable authority, pre-Judgment and post-Judgment interest, and such further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

260.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Cubicle hereby

demands trial by jury on all issues raised by this Amended Complaint.

Dated: New York, New York
       May 11, 2018

                                        BARTON LLP

                                        By: _____
                                            Maurice N. Ross (MR 6852)

                                        420 Lexington Avenue, 18th Floor
                                        New York, NY 10170
                                        mross@bartonesq.com
                                        *Tel.:* (212) 687-6262
                                        *Fax:* (212) 687-3667

                                        *Attorneys for Plaintiff*

James J. McGuire (JM 5390)
 *Of Counsel*